Filed 7/19/13  P. v. Yelverton CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE, | C068748 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F02094) |
| v. | |
| JEFFREY CRAYTON YELVERTON, SR., | |
| Defendant and Appellant. | |

Defendant Jeffery Crayton Yelverton, Sr., was involved in a fatal car accident.  As a result, the People filed an information charging defendant with voluntary manslaughter (Pen. Code, § 192, subd. (a))[1] and hit and run (Veh. Code, § 20001, subd. (b)(2)).  Following trial, a jury found defendant guilty of both crimes.  Finding the offenses were committed pursuant to separate criminal objectives, the trial court sentenced defendant to a term of six years on the voluntary manslaughter and a consecutive eight months on the hit and run.  Defendant appeals the sentence imposed, contending:  (1) his sentence for

---

[1] Undesignated statutory references are to the Penal Code.

1

hit and run should have been stayed under section 654; and, (2) the trial court abused its discretion in imposing consecutive sentences. We find no error and affirm the judgment.

FACTUAL BACKGROUND

For about a year prior to the accident, defendant played poker every Sunday morning at Capitol Casino on 16th Street. One Sunday afternoon in March 2010, Massimo Marini, Mike Rios, and Bill Deollas were outside the Loaves & Fishes complex where they worked. Standing on the corner of a cul-de-sac off of 12th Street, Marini and David Toney heard an engine revving. The car was approaching them from 16th Street. Marini recognized the car and defendant as the driver, as he had repeatedly sped through the area on numerous Sundays. The car passed the men, traveling at an unsafe speed, approximately 35-40 miles per hour. At the end of the cul-de-sac, it slowed, made a U-turn and came back. As the car headed back toward 16th Street, it began to accelerate again reaching speeds of 35-40 miles per hour. Marini and Deollas raised their arms and all three men spread out into the street, signaling for the driver to slow down. Instead, the car sped up and headed at Rios. Rios was holding a walkie-talkie and pointed the antenna at the driver.[2] At the last moment, Rios jumped out of the way of the oncoming vehicle and the car swerved into Deollas. Deollas jumped, but was hit by the car. He hit the windshield, was thrown about 10 feet in the air, rolled off the top of the car, and landed face down on the pavement. The driver made no attempt to stop; rather he sped up and left the area. Rios ran to the fire station to get help for Deollas. Marini called 911.

Toney, who witnessed the accident, got on his bicycle and followed the car towards 16th Street. The car turned the wrong way on a one-way street and wove in and out of traffic, changing lanes and passing cars. The car drove past Capitol Casino, where

---

[2] In previous statements and at the preliminary hearing, Rios stated he had nothing in his hands.

2

multiple police vehicles were parked in plain view. The car continued toward Richards Boulevard, passing multiple businesses. Toney got the attention of a Sacramento police officer and told him what had happened. The officer went in pursuit of defendant, but was not able to find defendant.

After leaving the scene of the accident, defendant continued on to Arden Fair Mall and called his wife. Defendant told her that on leaving the casino he had planned to go to the mall to buy a gift for their daughter, but someone tried to rob him. The person was armed with a gun and defendant hit him with the car.

Defendant then called 911 from the mall parking lot. In the 911 call, defendant claimed someone had attempted to rob him in the downtown area. He had hit the person with his car and was waiting for officers at the mall.

Sacramento Police Officer Bohrer spoke with defendant at the mall. Bohrer observed defendant's car had been damaged, the roof had a large dent on it and the windshield had "matter" on it. Defendant told police he had been in an accident. He stated he had made a wrong turn, when three men jumped in the street and blocked the road. He thought one of the men had a gun. He panicked. He was afraid to get robbed or shot, so he "floored" it. The men did not get out of the way, and he hit one of them. He was panicking and just kept driving. After being *Mirandized*,[3] defendant stated he had been playing poker at the casino, as he does every Sunday. He left the casino, decided to cut across 16th Street on a side street and got lost. Defendant stated he did not know the area well, but knew it was "bad." After he turned down one street, he saw a group of men and they were yelling at him, when he turned around in the cul-de-sac three of the men were standing in the street yelling at him. He thought one of them had a gun and they were going to rob him. He got scared and "gunned it . . . drove straight

---

[3]  *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

3

towards" the men. He knew he had hit one of the men and that man had to be injured. He panicked and left the scene. Although he passed the casino, he did not stop there because he was panicked. Bohrer determined defendant was not under the influence of drugs or alcohol. Defendant denied using drugs and denied he had been in the area to purchase drugs. Subsequent testing revealed that defendant had ingested marijuana within the last 48 hours.

Deollas was taken to U.C. Davis Medical Center. He was unconscious and had a severe open skull fracture. He remained in a coma for about six weeks and then he died. The cause of death was determined to be blunt force head injury.

PROCEDURAL HISTORY

An information charged defendant with voluntary manslaughter (§ 192, subd. (a)) and failing to stop at the scene of an accident resulting in an injury (Veh. Code, § 20001, subd. (b)(2)). As to the voluntary manslaughter, the information further alleged defendant had fled the scene as an enhancement (Veh. Code, § 20001, subd. (c)). The enhancement allegation was dismissed on the People's motion. Following trial, a jury found defendant guilty on both counts.

The trial court denied defendant probation and sentenced him to six years in prison for voluntary manslaughter and a consecutive term of eight months for fleeing the scene. In reaching this sentence, the court considered the probation report, victim impact statements, letters from the victim's family, defendant's statement in mitigation which included letters of support, argument from counsel, and a statement from defendant. The court found "In this matter I have been privy to all of the information conveyed in the trial and very aware of the factual underpinnings of the case. I do not find this to be a case appropriate for probation in light of the factual circumstances and the manner of commission of the crime. [¶] While I agree with the defense that I don't consider this a crime of planning or sophistication, the characterization of that particular factor in probation is not -- the Court does not adopt that, but I do find that the confluence of all

4

the facts surrounding this particular crime to be very aggravating, senseless, and while inexplicable, certainly not excusable because we don't understand the motivation.  [¶] The jury rejected the defendant's version of facts, as does the Court, based on the evidence presented in this trial.  And in finding that conclusion further finds, therefore, that the defendant lied to cover up his own crime.  And I do take that into account as well.  [¶]  This was a -- not just a loss of life, as the friends and family here know, this was a life stolen from them. . . .  [¶] . . . [¶]  And it is the judgment and sentence of this Court that for the crime that you have committed in Count One, the crime of voluntary manslaughter, the Court will imprison you, order that you be imprisoned in the state prison for the middle term of six years.  [¶]  Additionally, for the crime of hit and run, the Court will order a consecutive sentence as the Court finds that to be a distinct and different offense on the facts of that case, your leaving Mr. Deollas on the street to suffer the pain that he did and have ultimately a painful, slow death in the hospital, but you left him helpless there.  It is appropriate in the Court's view that you be imprisoned additionally and consecutively for that separate offense for eight months."

The trial court ordered defendant to pay $15,077 in victim restitution and $1,200 to the restitution fund.  The trial court imposed additional fines and penalties and awarded defendant 26 days of actual credits with conduct credits to be determined.

DISCUSSION

I

Defendant contends the trial court erred sentencing him to consecutive sentences in violation of section 654's prohibition against multiple punishments for a single act or indivisible course of conduct.  He argues there was "no divisible course of conduct based on [his] intent and objective.  He held one single and ultimate objective - to get out of a dangerous situation and find a place of safety."  As such, he claims he should not have been "punished twice for the same course of conduct . . . ."

5

Section 654, subdivision (a) provides, in pertinent part, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  Section 654 is intended "to insure that a defendant's punishment will be commensurate with his culpability."  (*People v. Perez* (1979) 23 Cal.3d 545, 552.)  The statute bars multiple punishment for both a single act that violates more than one criminal statute and multiple acts, where those acts comprise an indivisible course of conduct incident to a single criminal objective and intent.  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208; *Neal v. State of California* (1960) 55 Cal.2d 11, 19.)  Conversely, where a defendant commits multiple criminal offenses during a single course of conduct, he or she may be separately punished for each offense that he or she committed pursuant to a separate intent and objective.  (*People v. Beamon* (1973) 8 Cal.3d 625, 637-639.)  Multiple criminal objectives may "be a predicate for multiple punishment only in circumstances that involve, or arguably involve, multiple acts.  The rule does not apply where . . . the multiple convictions at issue were indisputably based upon a single act."  (*People v. Mesa* (2012) 54 Cal.4th 191, 199.)  The trial court may find separate objectives "when the objectives were either (1) consecutive even if similar or (2) different even if simultaneous."  (*People v. Britt* (2004) 32 Cal.4th 944, 952.)  A trial court's finding that "a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence.  [Citation.]"  (*People v. Blake* (1998) 68 Cal.App.4th 509, 512.)

Voluntary manslaughter and fleeing the scene of an accident are separate and distinct acts.  (See *People v. Butler* (1986) 184 Cal.App.3d 469, 471-474 (*Butler*); see also *People v. Jones* (2012) 54 Cal.4th 350, 358.)  The criminal act in voluntary manslaughter is an act that causes the death of another person (§ 192, subd. (a)); in this case, hitting Deollas with the car.  In contrast, " '[t]he gravamen of a [Vehicle Code]

6

section 20001 offense . . . is not the initial injury of the victim, but leaving the scene without presenting identification or rendering aid.' [Citation.]" (*People v. Harbert* (2009) 170 Cal.App.4th 42, 59.) "Although a violation of [Vehicle Code] section 20001 is popularly denominated 'hit-and-run,' the act made criminal thereunder is not the 'hitting' but the 'running.' " (*People v. Corners* (1985) 176 Cal.App.3d 139, 148.) Accordingly, the trial court was required to determine whether these separate acts were part of an indivisible course of conduct.

Whether the acts of which a defendant has been convicted constituted an indivisible course of conduct incident to a single objective or multiple criminal objectives is primarily a factual determination made by the trial court. " 'This determination will not be reversed on appeal unless unsupported by the evidence presented at trial.' [Citations.]" (*Butler, supra,* 184 Cal.App.3d at p. 473; *People v. Mesa, supra,* 54 Cal.4th at p. 199.)

Defendant played poker every Sunday at the Capitol Casino and had a history of driving through the area too fast. On the day of the accident, he revved the engine and sped down the cul-de-sac. Upon reaching the end of the cul-de-sac, he turned around and headed back down the street, accelerating and driving straight at Rios, Marini, and Deollas as they tried to slow him down. He swerved into Deollas, hit him, and fled the scene. Although he passed by police officers at Capitol Casino, a location he was familiar with, he did not stop there to report the accident or get help. Nor did he stop at any of the businesses along the way to the mall. Instead, he continued on to the mall, as he had originally planned to do upon leaving the casino. After calling his wife, he called 911 and reported he had gotten lost and, in evading what he thought was an attempted armed robbery, had hit someone. He repeated that claim to Bohrer.

Defendant claims his "ultimate objective was to get himself out of danger." This argument rests on his version of events, under which he thought Deollas and his friends were going to rob or shoot defendant and he panicked, hit Deollas, and kept driving

7

because he was afraid for his life. Both the jury and the trial court rejected these claims. Indeed, the trial court specifically found defendant lied to cover up his crime. As a reviewing court, we do not reweigh evidence or reevaluate a witness's credibility. (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60.)

As in *Butler,* here, in committing the voluntary manslaughter defendant was acting with general intent; he was recklessly driving down the street at a high speed and intentionally drove straight at Deollas, Marini, and Rios consciously disregarding the risk. In so doing, he caused a fatal accident. He then intentionally left the scene of the accident instead of remaining, rendering aid, and providing identification as required by law. This was an independent and separate criminal act, the intent and objective of which was to attempt to avoid responsibility for his crime. (*Butler, supra,* 184 Cal.App.3d at p. 474.) Substantial evidence supports the trial court's finding that the voluntary manslaughter and hit and run offenses were committed pursuant to separate criminal objectives. Therefore, separate punishment for each offense was not barred by section 654.

Furthermore, such a finding is consistent with the purpose underlying the prohibition on multiple punishment; to insure punishment is commensurate with culpability. "If multiple punishment is prohibited in this case . . . there would be no incentive for a person who causes an accident to stop and render aid as required by Vehicle Code section 20001. In fact, noncompliance would be rewarded. A defendant would suffer no greater criminal liability if he took his chances on escaping than if he stopped and rendered aid. Our Legislature could not and did not intend such an absurd result." (*Butler, supra,* 184 Cal.App.3d at p. 474.)

II

Defendant next contends even if the trial court did not err in refusing to stay the sentence under section 654, the trial court abused its discretion in imposing consecutive

8

terms in accord with the California Rules of Court, rule 4.425.**4** Relying on the arguments made in his section 654 claim, he argues because "the crimes and their objectives were not independent of each other and undoubtedly constituted a single period of aberrant behavior . . . the results [of the section 654] analysis should have dictated an election of concurrent terms . . . ." Alternatively, defendant argues counsel was ineffective in failing to object to the court's sentencing decision.

A trial court has discretion to determine whether several sentences are to run concurrently or consecutively. We will not disturb that determination absent a clear showing of abuse. (*People v. Bradford* (1976) 17 Cal.3d 8, 20.) An abuse of discretion is shown when the court exceeds the bounds of reason, all circumstances being considered. (*Ibid.*)

The criteria applicable to the trial court's discretion are set forth in rule 4.425, which states that in imposing consecutive sentences a trial court may consider: (1) whether the "crimes and their objectives were predominantly independent of each other"; (2) whether the "crimes involved separate acts of violence or threats of violence"; and (3) whether the "crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Rule 4.425(a)(1)-(3).) However, these criteria are not exclusive. Rule 4.408(a) states: "[T]he enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made. Any such additional criteria must be stated on the record by the sentencing judge."

We have reviewed above the trial court's determinations regarding the inapplicability of section 654, and conclude the court's findings regarding the

---

**4** Further rule references are to the California Rules of Court.

9

independent criminal objectives for each of defendant's crimes were supported by substantial evidence.  On that basis alone, we conclude that the court did not exceed "the bounds of reason" when it also imposed consecutive terms.  (See *Bradford, supra*, 17 Cal.3d at p. 20.)

The court considered the probation report, victim impact statements, statements from the members of the victim's family, defendant's statement in mitigation with included letters of support, defendant's statement at the hearing, and arguments of counsel.  The court stated the criteria it was using in choosing consecutive terms.  The court found the offenses were separate and distinct.  The court was aware of the full evidentiary record and facts of the case.  The court reflected defendant left Deollas "on the street to suffer the pain that he did and have ultimately a painful, slow death in the hospital, but you left him helpless there."  The court also found the offense "very aggravating, senseless, and . . . not excusable . . . ."  The court explicitly joined the jury in rejecting defendant's version of the facts and found that the defendant "lied to cover up his own crime.  And I do take that into account . . . ."  The court also considered defendant's lack of a prior record, his age, standing in the community, and his letters of reference.  Based on all of these criteria, the court found it appropriate to impose a consecutive term.  On the record before us, this decision was not an abuse of discretion.

### DISPOSITION

The judgment is affirmed.


       __BLEASE__      , Acting P. J.

We concur:


    __MAURO__     , J.


    __DUARTE__    , J.