Filed 4/29/14  P. v. Camacho CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>PABLO CAMACHO,<br><br>Defendant and Appellant. | H038705<br>(San Benito County<br>Super. Ct. Nos. CR-10-02356,<br>CR-11-01069, CR-11-01661, and<br>CR-11-01662) |

Pablo Martin Camacho was sentenced at the same time in four separate cases: CR-11-01661 (Case A); CR-11-01069 (Case B), CR 10-02356 (Case C), and CR-11-01662 (Case D).  He appeals from the judgments of conviction.[1]

Defendant raises multiple claims of error and asks this court to correct unauthorized sentences.  We make several sentencing modifications and, as modified, affirm.

I

*Procedural History*

In Cases A and B, which were consolidated for trial, a jury found defendant guilty of assaulting a peace officer (Pen. Code, § 245, subd. (c))[2] (Case A, count one), driving

---

[1]     Defendant also filed a petition for writ of habeas corpus, which we considered with the appeal and resolve by separate order.

with disregard for safety while evading a pursuing officer (Veh. Code, § 2800.2, subd. (a)) (Case A, count two), possession of a controlled substance (methamphetamine) for sale (Health & Saf. Code, § 11378) (Case B, count one), and possession of a device for injecting or smoking a controlled substance (Health & Saf. Code, § 11364, subd. (a)) (Case B, count two). A jury found the following true: three prior prison term enhancement allegations (§ 667.5, subd. (b) (Case A), three prior prison term enhancement allegations (§ 667.5, subd. (b) (Case B), and five prior drug-related felony conviction allegations (Health & Saf. Code, § 11370.2, subd. (c)) (Case B).

In Case C, defendant pleaded no contest to felony possession of a controlled substance, namely methamphetamine (Health & Saf. Code, § 11377, subd. (a)) (count one) and possession of a device for smoking a controlled substance (Health & Saf. Code, § 11364, subd. (a)) (count two)) and was placed on formal probation in 2011. Subsequently, defendant was found to have violated probation and sentenced.

In Case D, following a court trial, defendant was found guilty of dissuading a witness by force or threat (§ 136.1, subd. (c)(1)) (count two), making terrorist threats (§ 422) (count three), carrying a dirk or dagger (§ 12020, subd. (a)(4)) (count four), assault by means of force likely to produce great bodily injury (former § 245(a)(1)) (count five), and battery inflicting serious bodily injury (§ 243, subd. (d)) (count six). The court found the great bodily injury enhancement allegation applicable to count five (§ 12002.7, subd. (a)) to be true. It also found all the prior prison term enhancement allegations (§ 667.5, subd. (b)) to be true.

---

[2]     All further references are to the Penal Code unless otherwise specified.

II

*Alleged Trial Errors*

A. *Consolidation for Trial*

On appeal, defendant asserts that the trial court exceeded its authority under section 954 by consolidating Cases A and B for trial because the charged offenses in the two cases were not of the same class and there were "no common elements of substantial importance."

1. *Procedural Background*

On his pretrial motion for consolidation, the prosecutor told the court that he anticipated overlapping factual issues. He stated that Case B "involve[d] the apprehension after the initial crime detailed and charged in [Case A]." He indicated that the same officer was involved in both cases. Defense counsel objected, stating, "I don't believe that the defense in [Case B] is going to require that we bring up the facts from [Case A], and I think the link between the cases is attenuated at best, and we'd ask that they not be consolidated." The court nevertheless consolidated the cases for jury trial.

2. *Governing Law*

Section 954 provides in part: "An accusatory pleading may charge two or more different offenses connected together in their commission, *or* different statements of the same offense *or* two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." (Italics added.) "Offenses committed at different times and places against different victims are, nevertheless, 'connected together in their commission' when there is a 'common element of substantial importance' among them. [Citations.]" (*People v. Matson* (1974) 13 Cal.3d 35, 39; see *Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1218.)

"The purpose underlying this statute is clear: joint trial 'ordinarily avoids the increased expenditure of funds and judicial resources which may result if the charges

3

were to be tried in two or more separate trials.' [Citation.] 'A unitary trial requires a single courtroom, judge, and court attach[és]. Only one group of jurors need serve, and the expenditure of time for jury voir dire and trial is greatly reduced over that required were the cases separately tried. In addition, the public is served by the reduced delay on disposition of criminal charges both in trial and through the appellate process.' [Citations.] . . . For these and related reasons, consolidation or joinder of charged offenses 'is the course of action preferred by the law.' [Citation.]" (*People v. Soper* (2009) 45 Cal.4th 759, 772.)

"We must evaluate motions for severance and objections to consolidation in light of the showings then made and the facts then known. [Citations.] The burden of demonstrating that consolidation or denial of severance was a prejudicial abuse of discretion is upon him who asserts it; prejudice must be proved, and '[a] bald assertion of prejudice is not enough.' [Citation.]" (*People v. Balderas* (1985) 41 Cal.3d 144, 171.)

3. *No Prejudicial Abuse of Discretion*

It is undisputed that the two informations consolidated for trial did not charge offenses that were merely different statements of the same offense or were of the same class. Defendant contends the two sets of crimes were also not "connected together in their commission" and had "no common elements of substantial importance," therefore, the trial court had no discretion to consolidate the cases for trial.

The People now argue that evidence of the offenses charged in Case A was partially admissible on the possession for sale offense charged in Case B. Officer Pena testified at trial that, at the time defendant was apprehended in a motel room at the Hollister Inn, the officer believed that defendant might be going for a weapon based on "his prior history" and deployed a police canine. The defense objected on the ground of lack of foundation but the objection was overruled because evidence of earlier offenses, those charged in Case A, had been presented in the consolidated trial. This overruling of

4

an evidentiary objection at trial does not demonstrate that the trial court properly exercised its discretion when it ruled on the prosecutor's pretrial motion.

In *People v. Balderas*, *supra*, 41 Cal.3d 144, the California Supreme Court determined that "there were substantial judicial benefits to be gained from a consolidated trial." (*Id*. at p. 174.)  In upholding the trial court's order, the court stated: "The two criminal episodes had occurred within hours of each other, and the Wanner robbery and homicide, if prosecution evidence is believed, were essentially an aftermath to events of the previous evening.  The court was informed that there would be common witnesses, and that proved true.  Two of the principal prosecution witnesses . . . related defendant's admissions to them about both incidents.  [One of those witnesses] was also a percipient witness to Wanner's abduction and helped defendant dispose of evidence of the Wanner crimes." (*Ibid*.)  The court further noted that the "police conducted a common investigation of the two incidents, and it was reasonable to assume that there would be common police witnesses." (*Ibid*.)  It determined: "Under the circumstances, the court could properly conclude that the beneficial effects of a joint trial outweighed its potential prejudice." (*Ibid*.)

In *People v. Mendoza* (2000) 24 Cal.4th 130, the Supreme Court found the trial court properly found that the statutory requirements for consolidation were met:  "Here, the close time frame within which the consolidated offenses were committed shows a continuing course of criminal conduct. The Jung Wang robbery occurred at 4:00 p.m. on February 5, 1986; the Saiz robberies and kidnappings were committed the next day, at 2:20 a.m.; the commercial burglaries were perpetrated either during the evening after the Saiz crimes on February 6, or early the next morning; the Litovich robbery, rape, and murder occurred on the afternoon of February 7, between 2:00 and 3:00 p.m.  The Jung Wang robbery, the commercial burglaries, and the Litovich robbery all involved the intent to illegally obtain property.  In this case, . . . the ' "element of intent to feloniously

5

obtain property runs like a single thread through the various offenses. . . ."  [Citations.]' " (*Id*. at p. 160.)

At the time of the consolidation motion in this case, the prosecutor made no showing that the two sets of offenses charged in separate informations, alleged to have taken place about five days apart, were related to the same transaction or event.  It was not shown that the drug-related charges were the "aftermath" of the earlier crimes of assaulting a peace officer (§ 245, subd. (c)) and driving with disregard for safety while evading a pursuing officer (Veh. Code, § 2800.2, subd. (a)), which were charged in Case A.  Although the prosecutor said that the same officer was involved in both cases, he did not establish that both sets of crimes involved a "common element of substantial importance."  The officer's reason for releasing the police canine dog at the time of defendant's arrest in the motel room does not satisfy that test.  Moreover, this information was not before the trial court when it ruled on the motion.

Any abuse of discretion in consolidating the informations for trial on the showing made by the prosecutor did not, however, constitute a miscarriage of justice under the *Watson* standard of review.  (See *People v. Watson* (1956) 46 Cal.2d 818, 836; Cal. Const., art. VI, § 13; see also *People v. Saldana* (1965) 233 Cal.App.2d 24, 30-31; *People v. Renier* (1957) 148 Cal.App.2d 516, 520.)  "[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson, supra,* 46 Cal.2d at p. 836.)  The test is "based upon reasonable probabilities rather than upon mere possibilities." (*Id*. at p. 837.)

At trial, the crimes charged in Case A, assault upon a peace officer (§ 245, subd. (c)) and driving with disregard for safety while evading a pursuing officer (Veh. Code, § 2800.2, subd. (a)), were shown to have occurred after Officer Hutchinson attempted to effect a traffic stop of defendant, whom the officer recognized and knew had a felony

6

warrant. Defendant sped away and a police pursuit ensued. The pursuit was called off for safety reasons after defendant's vehicle struck Officer Pena's vehicle and Sergeant Richard Uribe tried unsuccessfully to disable defendant's vehicle by ramming it.

Some days later, the police received information that defendant was staying in a particular motel room and went there to arrest him. When the officers entered the motel room; defendant was sitting on the bed and Sonya Perez was in its little bathroom area.[3] Crystal methamphetamine was scattered across a nightstand, within arm's reach of defendant. Defendant was arrested for possession of a controlled substance for sale. Both defendant and Sonya were charged.

Rachel Fraze, a Department of Justice criminologist, testified that she received a white crystalline solid substance related to defendant from the San Benito County Sherriff's Office and tested it. The substance itself weighed ".44 grams net" and was determined to be methamphetamine.

Officer Pena, the prosecution's narcotics investigation expert, testified that .10 gram is a usable amount of methamphetamine and produces effects lasting six to eight hours. Although Officer Pena gave inconsistent testimony regarding the weight of "a teener" of methamphetamine and methamphetamine's street value, the officer's uncontroverted opinion was that defendant possessed the methamphetamine for sale based upon the amount possessed, the fact that a tenth of a gram is a usable amount, and his possession of empty baggies and a digital scale. Defendant did not present opposing expert opinion.

In closing argument, defense counsel maintained that defendant accidently struck Officer Pena's vehicle and defendant possessed methamphetamine for only his personal use.

---

[3] It is unclear whether she spells her name Sonya or Sonia but for the sake of clarity we will consistently refer to her as Sonya.

Defendant maintains that "joinder was prejudicial since inflammatory evidence from the strong assault case likely affected the jury's decision in the weak possession for sale case." Contrary to defendant's assertions, the evidence in Case A was not likely to inflame the jury's passions or prejudices against defendant with respect to the drug-related charges in Case B. The crimes charged in Case A were not especially brutal, shocking, or gruesome and the evidence was not the type likely to evoke emotional bias or an irrational response from the jury. No evidence was presented that defendant's hazardous driving while trying to flee from police resulted in any personal injury. There was evidence that defendant laughed at Officer Pena and then struck the officer's vehicle and forced it off the road into the center median's dirt but the officer testified that he was able to maintain control of his vehicle and slow down. He did not testify that he sustained any injury.

Further, the evidence underlying both sets of offenses was relatively straightforward and distinct. (Cf. *People v. Soper*, *supra*, 45 Cal.4th at p. 784.) Since "the consolidated offenses were factually separable," "there was a minimal risk of confusing the jury or of having the jury consider the commission of one of the joined crimes as evidence of defendant's commission of another of the joined crimes." (*People v. Mendoza*, *supra*, 24 Cal.4th at p. 163 [rejecting claim that trial court should have instructed sua sponte that evidence of one crime may not be used as evidence of another offense].)

Neither is reversal warranted due to the comparative strength of the cases. Although defendant describes the evidence in Case A as particularly strong and the evidence in Case B as weak, we do not agree with his characterization. The evidence was not so imbalanced between the two cases that their consolidation for trial created a danger of a prejudicial "spillover effect."

Further, the court told the jury: "Do not let bias, sympathy, prejudice or public opinion influence your opinion." It also instructed: "The fact that a criminal charge has

8

been filed against the Defendant is not evidence that the charge is true. You must not be biased against the Defendant just because he has been arrested, charged with a crime or brought to trial." The court explained the presumption of innocence.

Defendant has failed to persuade us that it is reasonably probable that the outcome of trial would have been more favorable to him had the cases been tried separately and not consolidated for trial.

### 4. *Consolidation Did Not Deprive Defendant of Due Process*

Regardless whether "a trial court's severance or joinder ruling [was] correct at the time it was made, a reviewing court must reverse the judgment if the 'defendant shows that joinder actually resulted in "gross unfairness" amounting to a denial of due process.' (*People v. Arias* [(1996) 13 Cal.4th 92,] 127 . . . .)" (*People v. Mendoza*, *supra*, 24 Cal.4th at p. 162.) Defendant argues that evidence of his "dangerous driving and intentional assault on Officer Pena likely prejudiced jurors' perceptions of [him]" and the "weak evidence he intended to sell the methamphetamine was unfairly bolstered by the strong and prejudicial evidence" in the other case.

As indicated, we disagree with defendant's assessment of the nature of the evidence in the two cases. The record does not disclose circumstances under which a jury could not be expected to fairly try both cases. Consolidation did not result in a "gross unfairness" amounting to a denial of due process.

### B. *Admission of Allegedly "False Testimony"*

Defendant asserts that his conviction of possession of a controlled substance for sale (Health & Saf. Code, § 11378) must be reversed because there is a reasonable probability that the conviction was based on "false evidence" that his "stash" of methamphetamine "was worth $350 when in fact it was worth about $10." He points to Officer Pena's testimony concerning the value of the methamphetamine seized.

Officer Johnny Pena first explained that methamphetamine is usually sold a half or a quarter of a gram at a time. When asked the substance's street value, however, Officer

Pena indicated that methamphetamine is sold in a smaller weight of "a sixteenth," which on the street is called a "teener." The prosecutor then asked the officer to estimate the price of a "[s]ixteenth of a gram." Officer Pena estimated that the price was "[b]etween $50 and $60." The officer also explained that the term "dime bag" could mean 10 dollars of a certain drug or it could refer to a coin-sized baggie. He had no guess as to how much 10 dollars worth of crystal methamphetamine would weigh.

On cross-examination, defense counsel asked, "But it's a sixteenth of an ounce, not a tenth of a gram that's sold?" Officer Pena replied, "Yes." Defense counsel then inquired, "And you said that's sold for $50 an ounce?" The officer replied, "Depends where you're buying it. That's an average price." On redirect examination, the prosecutor asked, "Now, I want to get back to something that you had stated earlier. It was called a teener. And you said this was one-sixteenth of a gram; is that correct?" Officer Pena, answered, "Yes." He confirmed that one-sixteenth of a gram was less than .1 grams and that the "going rate" for a "teener" was "$50 to $60."

Defendant now asserts on appeal that Officer Pena's testimony was false because a "teener is 1/16 of an ounce, not 1/16 of a gram."[4] In support of this assertion, he cites to various Internet sources. Citing section 1473, subdivision (b)(1), defendant argues that his conviction must be reversed because it was impacted by the admission of material false evidence. He also contends that "[t]he prosecutor exploited Pena's false testimony in closing argument." The prosecutor relied on Officer Pena's testimony to argue that .44 grams of methamphetamine provided "almost four-and-a-half hits" or six or seven

---

[4]    The metric equivalent of one ounce (avoirdupois) is 28.349 grams and the approximate U.S. equivalent of one gram is 0.035 ounce. (Wesbster's Third New International Dict. (1993 ed.) Measures and Weights table, p. 1399, & Metric System Table, p. 1424; see Evid. Code, §§ 452, subd. (h), 459.) Thus, a sixteenth of an ounce (avoirdupois) equals approximately 1.77 grams.

10

"teeners," each with a street value of roughly $50, and suggested that defendant had "a considerable amount of methamphetamine"

On appeal, the People concede that "[d]uring questioning, the prosecutor exhibited a misunderstanding about the difference between a sixteenth of an ounce and a sixteenth of a gram which Officer Pena did not immediately correct, and thus, at two points he mistakenly testified that a sixteenth of a gram costs approximately $50 to $60."

We must emphasize at the outset that the weight of a "teener" is not a judicially noticeable fact. (See Evid. Code, §§ 451, subd. (f) ["Facts and propositions of generalized knowledge that are so universally known that they cannot reasonably be the subject of dispute "], 452, subds. (g) ["Facts and propositions that are of such common knowledge within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute"] & (h) ["Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"].)  Further, the alleged falsity of testimony that a "teener" is a sixteenth of a gram is not apparent without resorting to inferences or deductions.

"Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  (*People v. Huston* (1943) 21 Cal.2d 690, 693.)"  (*People v. Maury* (2003) 30 Cal.4th 342, 403.)  Testimony believed by a trier of fact cannot be rejected by an appellate court unless it is physically impossible or its falsity is apparent without resorting to inferences or deductions.  (See *People v. Maciel* (2013) 57 Cal.4th 482, 519; *People v. Thornton* (1974) 11 Cal.3d 738, 754, disapproved on another ground in *People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12.)

Of course, a criminal defendant can attempt to discredit a prosecution's expert.  "A party may impeach an expert witness by *contradiction*, i.e., by showing the falsity of any

11

matter upon which the expert based his opinion.  This can be done either by cross-examination of the expert or by calling other witnesses to offer evidence showing the nonexistence or error in the data upon which the first expert based his opinion.  (See Evid. Code, §§ 721, subd. (a), 780, subd. (i), 801, subd. (b); [citations].)"  (*Kennemur v. State of California* (1982) 133 Cal.App.3d 907, 922-923.)  Defendant's counsel did seek to discredit Officer Pena by cross-examination.

We are certainly aware that "[u]nder well-established principles of due process, the prosecution cannot present evidence it knows is false and must correct any falsity of which it is aware in the evidence it presents, even if the false evidence was not intentionally submitted.  (*Giles v. Maryland* (1967) 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737; [citations].)"  (*People v. Seaton* (2001) 26 Cal.4th 598, 647; see *People v. Morrison* (2004) 34 Cal.4th 698, 716-717.)  Defendant does not argue and the record before us does not reflect, however, that the prosecutor knew at the time of trial that a "teener" means a sixteenth of an ounce.

Defendant forfeited appellate review of any claim that the trial court erroneously admitted Officer Pena's testimony that "a teener" weighs a sixteenth of a gram by failing to specifically and timely object at trial.  (See Evid. Code, § 353; see also *People v. Valdez* (2012) 55 Cal.4th 82, 130 [evidentiary objection not properly asserted below is not cognizable on appeal].)  Section 1473, subdivision (b)(1), and the case authorities concerning that section, do not aid defendant because the section applies to a petition for writ of habeas corpus, not to an appeal from a judgment.[5]  We find no basis for reversal on appeal based on the allegedly false evidence.

---

[5]     Section 1473, subdivision (b)(1), allows a petitioner to seek habeas relief on the ground that "[f]alse evidence that is substantially material or probative on the issue of guilt or punishment was introduced against [him] at any hearing or trial relating to his incarceration."  (§ 1473, subd. (b)(1).)  "[U]nder the present version of section 1473 it does not matter *why* evidence is false or *whether any party to the proceeding knew* it was false.  So long as some piece of evidence at trial was actually false, and so long as it is

C. *Alleged Ineffective Assistance of Counsel*

Defendant argues that his trial counsel provided ineffective assistance in a couple of respects.[6]

1. *Governing Law*

In *Strickland v. Washington* (1984) 466 U.S. 668 [104 S.Ct. 2052] (*Strickland*), the United States Supreme Court established a two-part test for evaluating a claim of ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient." (*Id*. at p. 687.) "Second, the defendant must show that the deficient performance prejudiced the defense." (*Ibid*.)

As to the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." (*Id*. at p. 688.) "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." (*Ibid*.)

"Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (*Id*. at p. 689.) Courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (*Ibid*.)

_____

reasonably probable that without that evidence the verdict would have been different, habeas corpus relief is appropriate." (*In re Richards* (2012) 55 Cal.4th 948, 961.) The habeas corpus petitioner bears the burden of pleading and proof. (*In re Sassounian* (1995) 9 Cal.4th 535, 546-547; see *People v. Duvall* (1995) 9 Cal.4th 464, 474.)

[6] In his reply brief, defendant properly withdraws a third ineffective assistance claim that was not developed. " '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration. [Citations.]' [Citations.]" (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

As to the prejudice prong, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  (*Id*. at p. 693.) "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*Id*. at p. 694.)

"In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently.  [Citations.] Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different.  [Citation.]  This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' [Citation.]  The likelihood of a different result must be substantial, not just conceivable. [Citation.]"  (*Harrington v. Richter* (2011) 131 S.Ct. 770, 791-792.)

The U.S. Supreme Court has advised that "[t]he object of an ineffectiveness claim is not to grade counsel's performance" and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . , that course should be followed."  (*Strickland*, *supra*, 466 U.S. at p. 697.)  It is unnecessary to "address both components of the inquiry if the defendant makes an insufficient showing on one." (*Ibid*.)

2.  *Weight of "Teener"*

Defendant urges this court to reverse on the ground that his counsel provided ineffective assistance of counsel by not objecting to the "false evidence" that a "teener" weighs a sixteenth of a gram.  He maintains that "the record affirmatively discloses counsel had no rational tactical purpose" for failing to object and "it is reasonably probable counsel's failure to object impacted the jury's decision . . . ."

14

There is no evidentiary objection of "false evidence" although presumably evidence that is demonstrably false without resort to inferences or deductions would be irrelevant and hence inadmissible. (See Evid. Code, §§ 210, 350.) Officer Pena's testimony that "a teener" refers to a sixteenth of a gram of methamphetamine was not, however, demonstrably "false evidence" without resort to inferences or deductions. (See *People v. Maciel*, *supra*, 57 Cal.4th at p. 519) In addition, the weight of "a teener" is not a judicially noticeable fact. (See Evid. Code, §§ 451, subd. (f), 452, subds. (g) & (h).)

Normally, credibility of a witness is a matter for the trier of fact. (See Evid. Code, § 780.) "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." (*Davis v. Alaska* (1974) 415 U.S. 308, 316 [94 S.Ct. 1105].) "The [federal] Constitution . . . protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit. Constitutional safeguards available to defendants to counter the State's evidence include the Sixth Amendment rights to counsel [citation]; compulsory process [citation]; and confrontation plus cross-examination of witnesses [citation]. Apart from these guarantees, we have recognized, state and federal statutes and rules ordinarily govern the admissibility of evidence, and juries are assigned the task of determining the reliability of the evidence presented at trial. [Citation.]" (*Perry v. New Hampshire* (2012) 132 S.Ct. 716, 723.) "It is precisely the function of a judicial proceeding to determine where the truth lies." (*Imbler v. Pachtman* (1976) 424 U.S. 409, 439 [96 S.Ct. 984] (Conc. opn. of White, J.).)

On the record before us, we cannot conclude that defense counsel provided ineffective assistance by failing to object to allegedly "false evidence." (See *Strickland*, *supra*, 466 U.S. at pp. 687-688.)

15

3. *Failure to Elicit Additional Evidence*

Defendant argues that his counsel provided ineffective assistance by failing to elicit additional evidence showing that he possessed methamphetamine for personal use. Officer Pena testified that he found a digital scale, which dealers usually carry, and packaging material, a pouch of empty "small coin baggies." On cross-examination at trial, defense counsel elicited testimony from Officer Pena that he found a used syringe in the drawer of the same bedside table on top of which the methamphetamine was found and a used methamphetamine pipe. Officer Pena also acknowledged that neither a "pay/owe sheet" nor cash was found in the room. Defendant nevertheless criticizes his counsel for not asking Officer Pena about a cotton ball and crystal residue found with the syringe and eliciting the officer's opinion that "the cotton ball was 'common of people who inject methamphetamine.' " Officer Pena's incident report stated that the officer located a syringe in the night stand with a plastic container, which contained a cotton ball and crystal residue, and indicated "[t]his is common of people who inject methamphetamine with a syringe."

" 'As to whether certain witnesses should have been more rigorously cross-examined, such matters are normally left to counsel's discretion and rarely implicate inadequacy of representation.' (*People v. Cox* (1991) 53 Cal.3d 618, 662.)" (*People v. Williams* (1997) 16 Cal.4th 153, 217.) Defense counsel may have reasonably decided that eliciting additional evidence of personal use from Officer Pena would be unnecessarily cumulative.

Even assuming that defense counsel should have asked Officer Pena about the presence of a cotton ball and his opinion whether it was evidence of personal use, defendant fails to show the requisite prejudice. (See *Strickland*, *supra*, 466 U.S. at pp. 693-694, 697; *Harrington v. Richter*, *supra*, 131 S.Ct. at pp. 791-792.) There was already ample evidence of personal methamphetamine use before the jury. Officer Pena confirmed that someone can both use and sell methamphetamine and "sometimes sellers

16

will use a little bit of their own product."  He rejected the possibility "that all that [was] going on in that room [was] use of methamphetamines and not sales . . . ."  The officer testified:  "Users commonly sell to gather more methamphetamine for their own habit, and that's what I believe was going on."  Thus, Pena's opinion took into account the evidence of personal use and made clear that any use of methamphetamine did not rule out defendant's possession of methamphetamine for sale.  It was Officer Pena's opinion, based on his experience and training, that defendant possessed methamphetamine to sell, not simply to use. As to the failure to find any pay/owe sheet, Officer Pena explained that, because law enforcement used pay/owe sheets to prosecute narcotics dealers, dealers were not using them as often.

Defendant also complains that defense counsel did not ask Officer Hutchinson about defendant's statement to a nurse that he had just smoked two bowls.  Officer Hutchinson's supplemental incident report indicated that defendant made that statement in his presence.

We reject defendant's assertion that his out-of-court statement was admissible as circumstantial evidence of his state of mind, a nonhearsay purpose.[7]  While a statement not offered to prove the truth of the matter asserted is not hearsay (see § 1200, subd. (a)), defendant's out-of-court statement that he had smoked two bowls tended to prove that he did not intend to sell the methamphetamine only if his statement was true.  (See Evid.

---

[7]      We also note that defendant has not shown that asking Officer Hutchinson about defendant's hearsay statement to the nurse at the hospital following his arrest would have been within the scope of proper cross-examination.  (See Evid. Code, §§ 761, 773, subd. (a); *People v. McClellan* (1969) 71 Cal.2d 793, 811 ["Cross-examination, which is limited to '[matters] within the scope of the direct examination' . . . by Evidence Code, section 773, 'may be directed to the eliciting of any matter which may tend to overcome or qualify the effect of the testimony given . . . on direct examination.'  [Citation.]"].) Officer Hutchinson testified mainly about the vehicular pursuit.  He was questioned very briefly about the officers' discovery of methamphetamine and a digital scale in the motel room where defendant was arrested.

17

Code, §§ 210, 350; cf. *People v. Showers* (1968) 68 Cal.2d 639, 643 ["False statements regarding incriminating circumstances constitute evidence which may support an inference of consciousness of guilt"].) Defendant has not identified any applicable hearsay exception that would have allowed the admission of his statement for its truth. (See Evid. Code, §§ 1200 [hearsay rule]; 1220 [a party's out-of-court admission is not made inadmissible by the hearsay rule when offered *against* the declarant], see *People v. Gonzales* (2011) 52 Cal.4th 254, 292.) An out-of-court statement of a past event is not admissible under the hearsay rule exception for a statement of the declarant's then existing state of mind. (Evid. Code, § 1250, subd. (b); Assem. Com. on Judiciary com., 29 B, Pt. 4 West's Ann. Evid. Code (1995 ed.) foll. § 1250, p. 281.)

Moreover, as already discussed, Officer Pena's expert opinion regarding defendant's possession of methamphetamine for sale took into account evidence suggesting that defendant had been using methamphetamine. Defendant has not established that his trial counsel rendered ineffective assistance by not eliciting additional evidence that he possessed methamphetamine for his personal use. (*Strickland*, *supra*, 466 U.S. at pp. 687-688, 693-694; *Harrington v. Richter*, *supra*, 131 S.Ct. at pp.791-792.)

D.  *Alleged Cumulative Prejudice*

Defendant asserts that his trial on the charge of possession for sale was fundamentally unfair because of the cumulative prejudice arising from the trial court's erroneous consolidation of informations for trial, its improper admission of "false evidence," and defense counsel's ineffective assistance. We recognize that "a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error. [Citations.]" (*People v. Hill* (1998) 17 Cal.4th 800, 844-845.) Here, there is no prejudice to cumulate. "A defendant is entitled to a fair trial, not a perfect one. (See *People v. Miranda* (1987) 44 Cal.3d 57, 123 . . . .)" (*People v. Mincey* (1992) 2 Cal.4th 408, 454.)

18

# III

## *Sentencing Errors*

On appeal, defendant claims that the trial court imposed an unauthorized sentence in several respects.[8] "A claim that a sentence is unauthorized may be raised for the first time on appeal, and is subject to correction whenever the error comes to the attention of the reviewing court. (*People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6 . . . .)" (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1048, fn.7.)

### A. *Felony Assault upon a Peace Officer*

At the time of sentencing, the trial court stated that it was imposing "the upper term of eight years in state prison" on defendant's conviction of assault upon a peace officer in violation of section 245, subdivision (c) (Case A, count one). Defendant asserts that the court erred in imposing an eight-year term as the maximum punishment for that offense. The People properly concede that the upper term for the crime was five years. (See § 245, subd. (c).) Accordingly, the sentence must be corrected.

### B. *Enhancement Term for Personal Infliction of Great Bodily Injury*

At the time of sentencing, the trial court imposed a consecutive one-year term (equivalent to one-third the midterm) for committing assault by means of force likely to produce great bodily injury in violation of former section 245, subdivision (a)(1) (Case D, count five) plus a three-year enhancement term for personal infliction of great bodily injury (§ 12022.7, subd. (a)).[9] Defendant does not challenge the subordinate term imposed for that assault but he maintains that the attached enhancement term must be reduced to one year because it is part of the subordinate sentence.

---

[8] In his reply brief, defendant withdraws a fourth claim of sentencing error.

[9] Section 12022.7, subdivision (a), provides: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."

The People concede that defendant is correct and we agree. Under California law, "[t]he subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses." (§ 1170.1, subd. (a).) Accordingly, the enhancement term applicable to the subordinate assault offense must be reduced to one year (one-third of a three-year term).

C. *Section 654*

The trial court imposed a consecutive term of one year (one-third of the midterm) for dissuading a witness by force or threat (§ 136.1, subd. (c)(1)) (Case D, count two) and a consecutive term of eight month (one-third of the midterm) for making criminal threats (§ 422) (Case D, count three). Defendant contends that the trial court violated section 654 by punishing both offenses since the crimes involved the same act, the same victim, and the same objective. The People agree.

Don Magnuson, a City of Hollister police officer, testified that at approximately 1:00 in the afternoon on January 11, 2011, he responded to call regarding a disturbance between defendant and Sonya Perez. After defendant was contacted, Officer Magnuson searched defendant, finding a knife concealed in defendant's left jacket pocket; the officer then questioned defendant about the reported disturbance. The officer also walked around the area from which defendant had come to search for the backpack that reportedly had been taken. Defendant was arrested.

Raymond Celano, a City of Hollister police officer, testified that he received a dispatch at approximately 8:20 p.m. on January 11, 2011 and spoke with Sonya Perez in front of a Jack in the Box. Sonya told him that defendant was following her and earlier in the day defendant had taken her purse from her. Sonya seemed scared for her life; she was crying and upset and she did not want to be left alone. Officer Celano searched the area for defendant but he was unable to find him. Sonya left another call for the officer at

20

approximately 11:23 p.m. asking for him to contact her. The officer went to Sonya's residence and spoke to her in person. Sonya provided Officer Celano with a copy of her voice mail messages.

Defendant had left a series of audio cell phone messages for Sonya. In his first message, defendant stated in part, "Don't call the cops; I'll fucking get you." The second message was inaudible. In his third message, defendant said, "You had your chance." In the fourth message, defendant said, "You need to answer your phone fucker." In the audible part of the fifth message, defendant stated, "You took off with the cops from Jack in the Box."

In closing argument, the prosecutor considered the messages proof of counts two and three, dissuading a witness by force or threat (§ 136.1, subd. (c)(1)) and making criminal threats (§ 422). He pointed to the warning, "Don't call the cops; I'll fucking get you."

Section 654, subdivision (a), provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor." (*Neal v. State of California* (1961) 55 Cal.2d 11, 19; but see *People v. Correa* (2012) 54 Cal.4th 331, 334 [holding that section 654 does not bar multiple punishment for multiple violations of the same criminal statute and disapproving contrary dictum in *Neal v. State of California*].)

"Our case law has found multiple criminal objectives to be a predicate for multiple punishment only in circumstances that involve, or arguably involve, multiple acts. The rule does not apply where . . . the multiple convictions at issue were indisputably based upon a single act. The rule was not intended to permit multiple punishment in such cases

21

because it would violate the plain language of section 654." (*People v. Mesa* (2012) 54 Cal.4th 191, 199; see *People v. Kramer* (2002) 29 Cal.4th 720, 722 [when a single act constitutes more than one crime, section 654 permits multiple convictions but not multiple punishment].) "Whether multiple convictions are based upon a single act is determined by examining the facts of the case." (*People v. Mesa*, *supra*, 54 Cal.4th at p. 196.)

In *People v. Mesa*, *supra*, 54 Cal.4th 191, the Supreme Court approvingly cited *People v. Mendoza* (1997) 59 Cal.App.4th 1333:  "The argument that a defendant could be punished twice for a single act if the defendant harbored multiple criminal objectives was rejected in *People v. Mendoza* (1997) 59 Cal.App.4th 1333 . . . .  There, the court held that the defendant could not be punished for making a terrorist threat and for dissuading a witness based upon a single statement to the victim." (*People v. Mesa*, *supra*, 54 Cal.4th at p. 199.)  Here, the prosecution focused on defendant's statement, directing Sonya not to call police and warning her that he would "fucking get" her, as the basis for both offenses.  The trial court should have stayed the sentence on the conviction for making terrorist threats pursuant to section 654.

## DISPOSITION

We modify the judgment in Case CR-11-01661 to reflect an upper term of five years on the conviction of assault upon a peace officer (§ 245, subd. (c)) (count one).  We modify the judgment in Case CR-11-01662 to reflect a subordinate enhancement term of one year (§ 12022.7, subd. (a)) applicable to the conviction of assault by means likely to produce great bodily injury (former § 245, subd. (a)(1)) (count five) and a stay of the sentence imposed on the conviction of terrorist threats (§ 422) (count three) pursuant to Penal Code section 654.  With the modifications, the judgments in the four cases are affirmed.

22

_____

ELIA, Acting P. J.

WE CONCUR:

_____

MIHARA, J.

_____

GROVER, J.