Filed 6/4/12

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S185688 |
| v. | ) | |
| | ) | Ct.App. 4/1 D056280 |
| TOMMY ANGEL MESA, | ) | |
| | ) | Riverside County |
| Defendant and Appellant. | ) | Super. Ct. No. RIF137046 |
| _____ | ) | |

Penal Code section 654 provides that a defendant may be punished only once for "[a]n act or omission that is punishable in different ways by different provisions of law." (All statutory references are to the Penal Code.) In each of two separate incidents, defendant Tommy Mesa, a gang member and convicted felon, shot a victim and was convicted of and punished for assault with a firearm, possession of a firearm by a felon, and actively participating in a criminal street gang. As explained below, we hold that on the facts here, punishing defendant for assault with a firearm and for possession of a firearm by a felon precludes additional punishment for actively participating in a criminal street gang.

### I.

On the evening of April 27, 2007, Ghalen White was awakened by his son Jeron, who said "a bunch of guys" were "hanging out" in front of their Corona apartment complex. Jeron asked White to go outside with him and his prom date to meet his date's mother. Outside, White saw a group of five or six men, including defendant. He told Jeron and his date to wait near the apartment.

1

As White walked toward the street, defendant left his group and approached White and asked: "Why are you walking tough in my neighborhood []?" White understood this statement to mean that defendant and his companions were gang members who considered this neighborhood to be their territory. White said he was not from the area. Defendant responded, "But you're still walking tough in my neighborhood." White replied that he was just there for his son's prom, but defendant again said, "You're still walking tough in my neighborhood."

White became concerned and opened the door to his nearby car to "have some kind of cover." When White and defendant were about two car lengths apart, defendant pulled out a gun and pointed it at White. White dove into his car and heard three quick gun shots. White was shot in the side; the bullet traveled through his body and exited the left side of his torso. Defendant looked in the back window of the car and then fled.

Two days later, on April 29, Alvin Pierre rode his bicycle into a shopping center parking lot in Corona. Defendant said to him, "What the fuck are you looking at?" Pierre rode past defendant, got off his bicycle, and tried to ask defendant what he had said. Before Pierre could finish his question, defendant shot Pierre in the groin. The bullet traveled through his scrotum and exited his right leg. At the hospital, Pierre's left testicle had to be removed.

Defendant was arrested in his home the next day. He was found wearing a bulletproof vest, hiding in a closet. He possessed the handgun that ballistics analysis showed had been used in both shootings, in addition to a rifle and ammunition.

The investigating detective testified as an expert regarding criminal street gangs. According to the detective, defendant was a member of the Coroneros clique of the Corona Varios Locos (CVL) criminal street gang. CVL was the predominant Hispanic gang in Corona with about 220 members. Both shootings

2

in this case took place within blocks of Fourth Street, the portion of Corona considered to be the hub of CVL criminal activity. Defendant had at least five tattoos on his face and neck that indicated he was a CVL member. CVL's criminal activities include attempted murders, assaults with deadly weapons, and possession of firearms. Gangs seek to obtain "respect" primarily by committing crimes and generating fear within the community. Gangs also seek to instill fear in their communities in order to deter witnesses to the gang's crimes from coming forward.

Defendant testified and admitted that he was a gang member and that he shot both victims. But he claimed he shot White accidently and denied that either shooting had anything to do with the gang.

As relevant here, the jury found defendant guilty of three offenses for each shooting: assault with a firearm (§ 245, subd. (a)(2)) with an enhancement for committing the assault for the benefit of a gang (§ 186.22, subd. (b)), possession of a firearm by a felon (former § 12021, subd. (a)(1), now § 29800, subd. (a)(1)), and actively participating in a criminal street gang (§ 186.22, subd. (a)). For the two assaults, defendant was sentenced to five years in prison plus a 10-year gang enhancement in addition to other substantial enhancements. For the firearm possession offenses, defendant was sentenced to two consecutive terms of eight months in prison. And for the gang crimes, defendant was sentenced to two consecutive terms of eight months in prison. Defendant's total prison sentence was 39 years, eight months.

## II.

Penal Code section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." In each of

3

two separate incidents, defendant, who was a gang member and convicted felon, shot an innocent victim. For each incident, defendant was punished three times: for assault with a firearm, for possession of a firearm by a felon, and for participating in a criminal street gang. Defendant argues that section 654 precludes punishment for participating in a criminal street gang in addition to his punishments for assault with a firearm and possession of a firearm by a felon.

"Since its origin in 1872, the Penal Code has prohibited multiple punishment for a single 'act or omission.' (§ 654.) Although our interpretation of that provision has varied somewhat over the years, we have consistently held that it bars imposing [multiple] sentences for a single act or omission, even though the act or omission may violate more than one provision of the Penal Code. [Citation.] Since 1962 we have interpreted section 654 to allow multiple convictions arising out of a single act or omission, but to bar multiple punishment for those convictions. [Citations.] . . . [E]xecution of the sentence for one of the offenses must be stayed." (*People v. Siko* (1988) 45 Cal.3d 820, 823 (*Siko*); *People v. Latimer* (1993) 5 Cal.4th 1203, 1208 [" 'Insofar as only a single act is charged as the basis for the conviction . . . , the defendant can be punished only once.' [Citation.]"]; *People v. Kynette* (1940) 15 Cal.2d 731, 762 [holding that § 654 precluded multiple punishment for attempted murder, assault with intent to murder, and malicious use of explosives because "all three offenses though involving variable elements are traceable to and are the direct result of the placing of a bomb in the automobile of the victim"], overruled on another ground in *People v. Bonelli* (1958) 50 Cal.2d 190, 197.)

Whether multiple convictions are based upon a single act is determined by examining the facts of the case. The defendant in *Siko* forcibly raped and sodomized a nine-year-old girl and was convicted of rape, sodomy, and lewd conduct with a child under 14 years of age. This court held that the defendant could not be punished for both rape and lewd conduct based upon a single act: "[I]f a person rapes a 13-year-

4

old, he can be convicted of both rape and lewd conduct with a child on the basis of that single act, but he cannot be punished for both offenses . . . ." (*Siko*, *supra*, 45 Cal.3d at p. 823.) We rejected the People's argument that section 654's ban on multiple punishment for a single act or omission was not violated "because defendant committed one or more lewd acts other than the rape and sodomy." (*Siko*, at p. 825.) We concluded that "a review of the record demonstrates the contrary. . . . [T]he charging instrument and the verdict both identify the lewd conduct as consisting of the rape and sodomy rather than any other act. Nor did anything in the prosecutor's closing argument or in the court's instructions suggest any different emphasis." (*Id.* at p. 826.)

This court also relied upon the state of the evidence in *People v. Tideman* (1962) 57 Cal.2d 574, 584, to decide that section 654 prohibited multiple punishment for unlawful abortion and murder because the two convictions were based upon a single act. We observed that the defendant's "single act was intended to unlawfully abort the victim. He admitted that fact by his plea of guilty. But that act also, *it appears from the evidence*, caused the victim's death. Thus defendant's criminal act is exactly that which calls for application of section 654: 'An act . . . which is made punishable in different ways by different provisions of this code . . . may be punished under either of such provisions, but in no case . . . under more than one. . . .' " (*Tideman*, at p. 584, italics added.)

Here, defendant was convicted of violating section 186.22, subdivision (a), which is part of the California Street Terrorism Enforcement and Prevention Act. (§ 186.20 et seq., added by Stats.1988, ch. 1242, § 1, pp. 4127-4129.) The Legislature passed the act in order "to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs, which together, are the chief source of terror created by street gangs." (§ 186.21.) In considering the bill, the Legislature was careful to

5

observe that "mere membership [in a gang] is not punishable under the bill. The United States Supreme Court has held that mere association with a group cannot be punished unless there is proof that the defendant knows of and intends to further its illegal aims. (*Scales v. United States* (1961) 367 U.S. 203, 229). This bill imposes sanctions on active participation in the gang only when the defendant knows about and specifically intends to further the criminal activity; or where he knows of the criminal activity and willfully promotes, furthers, or assists it." (Assem. Com. on Public Safety, analysis of Sen. Bill No. 1555 (1987-1988 Reg. Sess.) as amended June 23, 1987, p. 6.)

Accordingly, section 186.22, subdivision (a) — what we will call the gang crime — applies to "[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang." As the statutory text indicates, the gang crime has three elements: (1) "[a]ctive participation in a criminal street gang, in the sense of participation that is more than nominal or passive," (2) " 'knowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity,' " and (3) "the person 'willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' [Citation.]" (*People v. Lamas* (2007) 42 Cal.4th 516, 523.)

Defendant's gang membership was established by testimony of a police officer gang expert who examined photographs of tattoos on defendant's body and evidence of gang membership obtained from a search of defendant's bedroom. Defendant also testified and admitted that he was a gang member. The trial court instructed the jury that the prosecution had the burden of proving each element of the gang crime, including defendant's willful promotion, furtherance, or assistance of felonious criminal conduct by members of the gang. The court told the jury that the term

6

"[f]elonious criminal conduct means committing or attempting to commit . . . assault with a firearm, felon in possession of a firearm." The only acts shown by the evidence regarding each incident were that defendant possessed the firearm and shot each victim. These two acts resulted in three separate punishments for assault with a firearm, for possession of a firearm, and for the gang crime. (Defendant does not challenge the sufficiency of the evidence to support his convictions for the gang crime. The issue of whether a gang member acting alone can commit the gang crime is before us in *People v. Rodriguez*, 188 Cal.App.4th 722, review granted Jan. 12, 2011, S187680.)

For each shooting incident, defendant's sentence for the gang crime violates section 654 because it punishes defendant a second time either for the assault with a firearm or for possession of a firearm by a felon. "Here, the underlying [felonies] were the act[s] that transformed mere gang membership — which, by itself, is not a crime — into the crime of gang participation." (*People v. Sanchez* (2011) 179 Cal.App.4th 1297, 1315 (*Sanchez*).) As *Sanchez* put it, "section 654 precludes multiple punishment for both (1) gang participation, one element of which requires that the defendant have 'willfully promote[d], further[ed], or assist[ed] in any felonious criminal conduct by members of th[e] gang,' [citation] and (2) the underlying felony that is used to satisfy this element of gang participation." (*Id.* at p. 1301.) Section 654 applies where the "defendant stands convicted of both (1) a crime that requires, as one of its elements, the intentional commission of an underlying offense, and (2) the underlying offense itself." (*Sanchez*, at p. 1315.)

The Attorney General contends that such a rule would eviscerate the substantive offense of gang participation. But that is not so. It would simply limit punishment for the offense to circumstances in which the defendant's willful promotion, furtherance, or assistance of felonious conduct by a gang member was not also the basis for convicting the defendant of a separate offense — for example, when

7

there are sufficient grounds to convict a defendant under section 186.22, subdivision (a), but insufficient grounds to independently convict the defendant as an accessory.

Importantly, our holding does not mean that the commission of defendant's crimes for the benefit of his gang will go unpunished. To the contrary, defendant received an additional 10-year prison term as a sentence enhancement under section 186.22, subdivision (b)(1). The gang enhancement provision, which directly neighbors the substantive offense of gang participation in section 186.22, subdivision (a), shows that the Legislature knows how to — and did — make the fact of gang participation separately punishable from an underlying offense. (See § 186.22, subd. (b)(1) ["Except as provided in paragraphs (4) and (5), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, *in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted*, be punished as follows . . . ." (Italics added.)].)

The Court of Appeal reached the opposite conclusion, as does our dissenting colleague, by relying on *People v. Herrera* (1999) 70 Cal.App.4th 1456, which held that the defendant could be separately punished for attempted murder and active gang participation for his role in a drive-by shooting. In holding that multiple punishment was permitted under section 654, the *Herrera* court explained that "the defendant held multiple criminal objectives" even though the attempted murder and gang crime convictions were based on the same act. (*Herrera*, at p. 1466.) *Herrera* reasoned that whereas the defendant's objective in committing the attempted murders "was simply a desire to kill," the gang crime "encompasses a more complex intent and objective. . . . [¶] . . . [The gang crime] is a substantive offense whose gravamen is the *participation in the gang itself*." (*Id*. at p. 1467.) Multiple punishment was permitted under section 654, *Herrera* held, because "evidence supports the finding that Herrera intended to

8

aid his gang in felonious conduct, irrespective of his independent objective to murder." (*Herrera*, at p. 1468.)

But *Herrera*'s reliance on multiple criminal objectives or the separate "gravamen" of the gang crime to support multiple punishment is not persuasive. *Herrera* cites *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1393-1394 for the rule that "multiple punishment . . . may be imposed where the defendant commits two crimes in pursuit of two independent, even if simultaneous, objectives. [Citations.]" But the defendant in *Douglas* committed two separate acts (robbery and rape), and the question was whether those two acts were part of one indivisible course of conduct and thus not subject to multiple punishment under our precedents. (*Id.* at p. 1393, citing *People v. Harrison* (1989) 48 Cal.3d 321, 335 [§ 654 bars multiple punishment where multiple acts comprise a single, indivisible course of conduct].) While separate acts are held to constitute an indivisible course of conduct where the defendant " 'harbored a single intent' " (*Douglas*, at p. 1393, quoting *Harrison*, *supra*, 48 Cal.3d at p. 335), the court in *Douglas* found that the defendant's objective for the robbery was separate and independent from his objective for the rape (*Douglas*, at p. 1394).

Our case law has found multiple criminal objectives to be a predicate for multiple punishment only in circumstances that involve, or arguably involve, multiple acts. The rule does not apply where, as here and as in *Herrera*, the multiple convictions at issue were indisputably based upon a single act. The rule was not intended to permit multiple punishment in such cases because it would violate the plain language of section 654. Neither the Court of Appeal nor our dissenting colleague cites any precedent of this court to the contrary, and we disapprove *People v. Herrera*, *supra*, 70 Cal.App.4th 1456, to the extent it is inconsistent with this opinion.

The argument that a defendant could be punished twice for a single act if the defendant harbored multiple criminal objectives was rejected in *People v. Mendoza*

9

(1997) 59 Cal.App.4th 1333. There, the court held that the defendant could not be punished for making a terrorist threat and for dissuading a witness based upon a single statement to the victim. The Attorney General argued that the defendant "entertained separate objectives" because he had "a retaliatory objective" to punish the victim for testifying against his brother in the past and "a separate objective" to dissuade the victim from testifying against his brother again in the future. (*Id*. at pp. 1345-1346.) Rejecting this argument, *Mendoza* observed that "[t]he parties agree [the defendant]'s two convictions arose from a single act." (*Id*. at p. 1346; see also *People v. Louie* (2012) 203 Cal.App.4th 388, 397 ["A single criminal act, even if committed incident to multiple objectives, may be punished only once."]; cf. *People v. Solis* (2001) 90 Cal.App.4th 1002, 1022 [multiple punishment for arson and making terrorist threats permitted where the defendant threatened the victim and, an hour later, set fire to the victim's apartment].)

In the present case, the Attorney General contends that the gang crime involved a divisible course of conduct that consisted of defendant's (1) active participation in the gang and (2) knowledge of the gang's pattern of criminal activity, which happened over several years and were not the product of a single act. Our dissenting colleague similarly argues that participating in a criminal street gang is an act different from the act of shooting the victims or possessing a firearm. But elements (1) and (2) do not complete the offense under section 186.22, subdivision (a). The third element — willful promotion, furtherance, or assistance in felonious conduct by members of the gang — is essential because that is what "transform[s] mere gang membership — which, by itself, is not a crime — into the crime of gang participation." (*Sanchez*, *supra*, 179 Cal.App.4th at p. 1315.) Here, the evidence of the shooting or firearm possession offenses committed by defendant was the only evidence that he promoted, furthered, or assisted felonious criminal conduct by members of the gang. As defendant notes, the information alleged that defendant

10

committed each assault and related gang participation offense *on the same day*; in other words, he committed both offenses simultaneously. The gang crime punishes defendant for doing more than the act of shooting the victims or possessing a firearm, but there is no question that defendant's act of shooting the victims or possessing a firearm is punished by the gang crime.

The Court of Appeal also reasoned, and our dissenting colleague agrees, that multiple punishment is permitted under section 654 because the shootings harmed both the individual victims and the entire community, invoking the rule that section 654 does not apply to crimes of violence against multiple victims. (See *People v. Oates* (2004) 32 Cal.4th 1048, 1063.) But in *In re M.S.* (1995) 10 Cal.4th 698, we rejected the argument that generalized harm to the "community" rendered it a victim for purposes of the multiple victim exception to section 654, at least in the absence of specific legislative history "suggesting the enactment of [a statute] was accomplished *with an intent impliedly to repeal section 654*." (*In re M.S.*, *supra*, at p. 726, italics added.)

In sum, for each shooting incident, defendant's act of assault or unlawful firearm possession was separately punished by two provisions of law. Because the same act has been made "punishable in different ways by different provisions of law," this case falls within the literal terms of section 654.

11

## CONCLUSION

Section 654 does not permit punishment for defendant's gang crimes in addition to his punishments for assault with a firearm and possession of a firearm by a felon. Accordingly, defendant's two eight-month sentences for his two convictions under section 186.22, subdivision (a) must be stayed. In all other respects, the judgment of the Court of Appeal is affirmed.


LIU, J.


WE CONCUR:   CANTIL-SAKAUYE, C. J.
WERDEGAR, J.
CORRIGAN, J.

**DISSENTING OPINION BY CHIN, J.**

Whether defendant may be punished separately for the crime of active participation in a criminal street gang is a close question, as the sharp division within the Courts of Appeal indicates. (See *People v. Sanchez* (2009) 179 Cal.App.4th 1297, 1309-1316 [separate punishment prohibited]; *People v. Vu* (2006) 143 Cal.App.4th 1009, 1032-1034 [separate punishment prohibited]; *People v. Ferraez* (2003) 112 Cal.App.4th 925, 935 [separate punishment permitted]; *In re Jose P.* (2003) 106 Cal.App.4th 458, 468-471 [separate punishment permitted]; *People v. Herrera* (1999) 70 Cal.App.4th 1456, 1465-1468 [separate punishment permitted].) The Court of Appeal here agreed with the decisions permitting separate punishment, as do I. Accordingly, I would affirm the judgment of the Court of Appeal.

In 1988, the Legislature enacted the California Street Terrorism Enforcement and Prevention Act (the STEP Act). (Pen. Code, § 186.20 et seq.; all statutory references are to the Pen. Code.) It found and declared "that it is the right of every person . . . to be secure and protected from fear, intimidation, and physical harm caused by the activities of violent groups and individuals. . . . [¶] . . . [T]he State of California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods. These activities, both individually and collectively, present a clear and present danger to public order

1

and safety and are not constitutionally protected. . . . It is the intent of the Legislature in enacting this chapter to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs, which together, are the chief source of terror created by street gangs." (§ 186.21.)

In accordance with these findings, section 186.22, subdivision (a), part of the STEP Act, punishes "[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang." The elements of this crime are (1) active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; (2) knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and (3) the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang. (*People v. Lamas* (2007) 42 Cal.4th 516, 523.)

The jury found defendant guilty of the gang crime as to each shooting incident. To satisfy the requirement that defendant promoted, furthered, or assisted felonious conduct by gang members, the court instructed the jury it could consider defendant's commission of the underlying crimes of assault with a firearm and being a felon in possession of a firearm. Accordingly, evidence of the underlying assaults and defendant's being a felon in possession of a firearm helped prove the gang crimes. The question before us is whether the trial court properly punished defendant separately for the gang crimes in addition to the other substantive crimes.[1]

---

[1] As the majority notes, the trial court also imposed the sentence enhancement under section 186.22, subdivision (b)(1). Whether the court properly

*(Footnote continued on next page.)*

2

Subdivision (a) of section 654 provides, as relevant:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  Defendant argues, and the majority concludes, that because, on each occasion, the act of shooting the victim helped prove both the assault and the gang crime, section 654 prohibits punishing him for both crimes.

As did the Court of Appeal, I find persuasive the reasoning of *People v. Herrera*, *supra*, 70 Cal.App.4th 1456.  "Section 186.22, subdivision (a) punishes active gang participation where the defendant promotes or assists in felonious conduct by the gang.  It is a substantive offense whose gravamen is the *participation in the gang itself*.  Hence, under section 186.22, subdivision (a) the defendant must necessarily have the intent and objective to actively participate in a criminal street gang. . . .  [S]ection 186.22, subdivision (a) requires a separate intent and objective from the underlying felony committed on behalf of the gang.  The perpetrator of the underlying crime may thus possess 'two independent, even if simultaneous, objectives[,]' thereby precluding application of section 654."  (*Id.* at pp. 1467-1468, fns. omitted.)

Defendant's punishment for the gang crimes is not for the act of shooting the victims or possessing a firearm but *for participating in a criminal street gang*.  The other crimes were used to satisfy one element of the gang crime (to show defendant promoted criminal gang activity), but were not the gang crime itself.

---

*(Footnote continued from previous page.)*

imposed sentences for both the gang crime and the gang enhancement is not before us, and I express no opinion on that question

3

Although there is some overlap in the elements of the crimes, the gravamen of the criminal acts is different. On each occasion, two separate acts are being punished — (1) a specific assault (or possession of a firearm), and (2) participation in a criminal street gang — not one act "that is punishable in different ways by different provisions of law." (§ 654.)

The shootings themselves harmed Ghalen White and Alvin Pierre, the victims of those shootings. That defendant shot them to further criminal street gang activity additionally harmed, as the Legislature put it, "the peaceful citizens of their neighborhood[]." (§ 186.21.) I agree with the Court of Appeal that "the shootings were intended to both harm the individual victims and to demonstrate to the entire community the power of [defendant's] gang," and thus that section 654 does not prohibit punishing defendant "both for the broader crimes of instilling terror in a community by way of the multiple acts of his gang and the distinct and more grievous crimes of wounding [White] and Pierre."

*People v. Sanchez*, *supra*, 179 Cal.App.4th 1297, the case finding multiple punishment prohibited that contains the most complete analysis, analogized the situation here with the rule that a defendant may not be punished for both a felony murder and the underlying felony. (*Id*. at pp. 1315-1316, citing *People v. Mulqueen* (1970) 9 Cal.App.3d 532, 542-543; but see *People v. Osband* (1996) 13 Cal.4th 622, 730-731.) I agree with the Court of Appeal's rejection of this reasoning in this case: "In a felony-murder case where there is only one victim, the element of malice is found by way of the fact the homicide occurred during the commission of a dangerous felony. Where the underlying felony is robbery, there is but one act, 'the act of robbery . . . which made the homicide first degree murder.' (*People v. Mulqueen*[, *supra*, at p.] 547.) Multiple punishment is not permissible under those circumstances because there was only one act and more importantly only one criminal objective. (*Ibid*.) [¶] [Defendant's] culpability

4

under the [STEP] Act is quite different. Violation of section 186.22, subdivision (a), does not depend solely on the commission of the underlying offense. Rather, it depends on both the commission of the underlying offense *and* the separate act of actively participating in a gang. Thus, unlike felony murder, liability under section 186.22, subdivision (a), necessarily depends on conduct distinct from the conduct which gives rise to liability for any underlying offense."

The Court of Appeal explained that the shootings, part of defendant's active participation in a criminal street gang, terrorized others in the neighborhood. "It is that terror which the Legislature expressly addressed in section 186.21. In this sense, separate punishment under section 186.22 is far closer to the well-recognized exception to section 654 which permits multiple punishment when a defendant's conduct has injured more than one victim than it is to the felony-murder rule, relied upon by the court in *People v. Sanchez*[, *supra*, 179 Cal.App.4th 1297]."

The majority cites *In re M.S.* (1995) 10 Cal.4th 698, a case that does not involve the gang crime. I am not arguing, nor did the Court of Appeal conclude, that the Legislature somehow impliedly *repealed* section 654. I am arguing that active participation in a criminal street gang, which, as the Legislature declared when it created the crime, victimizes the neighborhood, is not the same *act* as the assaults. The fact that the crimes have different victims strongly supports this argument. *In re M.S.* says nothing to the contrary.

5

For these reasons, I would conclude that section 654 does not prohibit punishing defendant both for the assaults on the individual victims and for the gang crimes that targeted the neighborhood.  I would disapprove *People v. Sanchez*, *supra*, 179 Cal.App.4th 1297, and *People v. Vu*, *supra*, 143 Cal.App.4th 1009, to the extent they are inconsistent with this view.

CHIN, J.

WE CONCUR:

KENNARD, J.

BAXTER, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Mesa

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 186 Cal.App.4th 773
**Rehearing Granted**

_____

**Opinion No.** S185688
**Date Filed:** June 4, 2012

_____

**Court:** Superior
**County:** Riverside
**Judge:** Helios (Joe) Hernandez

_____

**Counsel:**

Richard de la Sota, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steven T. Oetting and Meredith A. White, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Richard de la Sota
1140 Highland Avenue, #137
Manhattan Beach, CA  90266
(310) 406-5752

Meredith A. White
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA  92101
(619) 645-2297