Filed 9/29/15  P. v. Espinoza CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MATTHEW ARMANDO ESPINOZA,<br><br>Defendant and Appellant. | C076516<br><br>(Super. Ct. No. SF117804A) |

A jury found defendant Matthew Armando Espinoza guilty of transportation of methamphetamine (Health & Saf. Code, § 11379; counts twenty-three & twenty-six), conspiracy to sell or transport methamphetamine (Pen. Code, § 182; Health & Saf. Code § 11379; count twenty-eight)[1] and active participation in a criminal street gang (§ 186.22, subd. (a); count thirty).  The jury also found true allegations that defendant committed the

---

[1] Undesignated statutory references are to the Penal Code.

1

crimes to benefit a criminal street gang (§ 186.22, subd. (b)) and had two prior drug convictions. (Health & Saf. Code, § 11370.2.) The trial court sentenced defendant to an aggregate term of 17 years, including a consecutive term of eight months for active participation in a criminal street gang.

On appeal, defendant argues the trial court should have stayed the sentence for active participation in a criminal street gang pursuant to section 654. The People concede the issue, and we accept the People's concession. Accordingly, we will stay the sentence for active participation in a criminal street gang and affirm the judgment as modified.

## BACKGROUND

In 2010, the California Department of Justice (DOJ) launched an investigation known as "Operation Crimson Tide," focusing on the activities of Norteño gang members in Sutter and Yuba Counties. During the course of their investigation, DOJ agents identified John Pantoja as the leader of the Southside Tracy Norteños.

Operation Crimson Tide was followed by an investigation focusing on gang activity in Tracy known as "Operation Gateway." During the course of Operation Gateway, DOJ agents wiretapped Pantoja's phone and intercepted a number of calls between Pantoja and defendant. Based on the content of these communications, DOJ agents identified defendant as a person of interest and obtained authorization to place a wiretap on his phone as well.

DOJ agents monitored defendant's cell phone communications for several months. During this time, DOJ agents intercepted telephone calls and text messages in which defendant discussed drug sales with Pantoja and others. DOJ agents also intercepted telephone calls and text messages in which defendant discussed other gang business with Pantoja, including personnel problems and problems with law enforcement.

Defendant was placed under surveillance. He was observed making frequent trips between San Leandro and Tracy, with multiple stops at different locations in Tracy.

2

Defendant's contemporaneous telephone calls and text messages indicate that he was delivering drugs to different people in Tracy.

On May 2, 2011, DOJ agents intercepted a telephone call from defendant to Rodney Taylor, a suspected gang member in Tracy. Defendant and Taylor discussed money that Taylor owed defendant for a previous drug deal and arranged to meet at a nearby market so that defendant could deliver two "eight balls" (seven grams) of methamphetamine. Officers from the Tracy Police Department immediately set up surveillance at the market. They observed a car pulling up in front of the grocery store with defendant in the passenger seat. They saw Taylor approach the passenger-side window and exchange something with defendant. Defendant left the area, and police officers detained Taylor. They found approximately seven grams of methamphetamine on him, the equivalent of two "eight balls."

On June 1, 2011, defendant received a call from his supplier. They discussed money and arranged to meet. Defendant's girlfriend, codefendant Natursia Cardoso, drove defendant to a house in Modesto. Defendant went into the house while Cardoso waited in the car. When defendant returned, Cardoso drove onto the freeway in the direction of Tracy.

Officers from the Tracy Police Department pulled Cardoso over a short time later. They searched the car and found a white plastic bag containing a crystalline substance in Cardoso's handbag. The substance was later determined to be 222 grams of methamphetamine. While he was being handcuffed, defendant told the arresting officer, "You know me. I'm a gang member. I shoved it in there."

On July 15, 2011, a grand jury indicted defendant and 10 others on various drug offenses. The indictment charged defendant with transporting and selling methamphetamine (Health & Saf. Code, § 11379), conspiring to transport and sell methamphetamine (§ 182; Health & Saf. Code, § 11379), and active participation in a

3

criminal street gang (§ 186.22, subd. (a).)[2]  The indictment alleged that the crimes were committed for the benefit of, at the direction of, and in association with a criminal street gang.  (§ 186.22, subd. (b)(1).)  The indictment also alleged that defendant had two prior drug convictions (Health & Saf. Code, § 11370.2), and served a prior prison term. (§ 667.5, subd. (b).)

Defendant's trial began in February 2014, after numerous continuances.  During the trial, a special agent with the DOJ's Bureau of Narcotic Enforcement, Daniel Garbutt, described the investigative techniques used in Operation Gateway and interpreted the coded language used in defendant's telephone communications and text messages.  Agent Garbutt also offered expert opinion testimony that defendant possessed and transported drugs for sale, and conspired with others to sell drugs.

Agent Garbutt also testified that gang members "keep their girlfriends or significant others in check," meaning that they monitor their girlfriends' or significant others' behavior to ensure they are not talking to law enforcement or otherwise compromising gang business.  Agent Garbutt explained that gang members sometimes use violence to keep their girlfriends and significant others "in check."

Another prosecution gang expert, Detective Michael Richards of the Tracy Police Department's Gang and Narcotics Enforcement Team, opined that defendant was a member of the Southside Tracy Norteños, and committed the charged drug offenses for the benefit of the gang.

Defendant's girlfriend, Cardoso, testified that she drove defendant from San Leandro to Tracy twice a week.  In Tracy, Cardoso would drive defendant from house to

---

[2]  The indictment charged defendant with six counts of transporting and selling methamphetamine, four of which were dismissed before trial.  The indictment also alleged a count for conspiracy to commit assault (§§ 182, 245) that was dismissed before trial.

house over a period of hours, making brief, 10-minute stops at each location. Cardoso suspected that defendant was delivering drugs.

Cardoso also testified that defendant physically assaulted her many times, noting three assaults that were particularly severe. On one occasion, defendant strangled Cardoso with a shoestring. On another occasion, defendant strangled Cardoso with his bare hands. On still another occasion, defendant beat Cardoso with closed fists to the point where she nearly passed out. Cardoso also testified that defendant threatened to slit her throat using a shard of glass from a broken windshield.

Following the close of evidence and closing arguments, the jury was instructed, inter alia, that in order to convict defendant of active participation in a criminal street gang, the prosecution would need to prove that: "the defendant actively participated in a criminal street gang[,] [¶] . . . [w]hen the defendant participated in the gang, he knew that members of the gang engaged in or have engaged in a pattern of criminal gang activity . . . and [¶] . . . [t]he defendant willfully . . . assisted, furthered, or promoted felonious criminal conduct by members of the gang, either by (A) directly and actively committing a felony offense, or (B) aiding and abetting a felony offense."

The jury was also instructed that, "[f]elonious criminal conduct means committing or attempting to commit any of the following crimes: Transportation or Sale of a Controlled Substance, in violation of Health and Safety Code [section] 11379; Possession of a Controlled Substance for Sale, in violation of Health and Safety Code [section] 11378; or Conspiracy to Commit the Crime of Transportation for Sale of a Controlled Substance, in violation of Penal Code [s]ection 182." The jury was also instructed that possession of a controlled substance for sale (Health & Saf. Code, § 11378) was a lesser included offense to the charge of transportation or sale of a controlled substance. (Health & Saf. Code, § 11379.) The jury was not instructed on assault by force likely to cause great bodily injury (§ 245, subd. (a)(1)) or making criminal threats. (§ 422.)

5

On March 6, 2014, the jury found defendant guilty of two counts of transporting and selling methamphetamine (Health & Saf. Code, § 11379), one count of conspiring to transport and sell methamphetamine (§ 182; Health & Saf. Code, § 11379), and one count of active participation in a criminal street gang. (§ 186.22, subd. (a).) The jury also found true all of the special allegations.

On May 9, 2014, defendant was sentenced to state prison for an aggregate term of 17 years, computed as follows: the upper term of four years for the first transportation of methamphetamine conviction, plus four years for the gang enhancement and six years for the prior drug convictions; a consecutive term of one year for the second transportation of methamphetamine conviction, plus one year four months for the gang enhancement; and a consecutive term of eight months for the active participation in a criminal street gang conviction. The sentence for conspiracy to transport and sell methamphetamine was stayed pursuant to section 654.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends, correctly, that his sentence for active participation in a criminal street gang must be stayed because it is based upon the same acts as the other offenses for which he was punished. The People concede the issue and we accept the concession.

Section 654 provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) "The purpose of section 654 is to prevent multiple punishment for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime. Although the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, the trial court may impose sentence for only one offense – the

6

one carrying the highest punishment. [Citation.]" (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135, fn. omitted.)

In *People v. Mesa* (2012) 54 Cal.4th 191, 199 (*Mesa*), our Supreme Court held that section 654 did not permit separate punishment for a section 186.22, subdivision (a) crime of active participation in a criminal street gang when the only evidence of such participation was the current charged offenses, even if there were multiple objectives. (*Mesa,* at pp. 199-200.) This is because the crime of being an active participant in a criminal street gang requires not only that the defendant be a member of the gang, but that he also promote, further, or assist in the felonious conduct. (*Id.* at pp. 196-197.) Thus, where the underlying felony is also the act " 'that transform[s] mere gang membership – which, by itself, is not a crime – into the crime of gang participation,' " section 654 bars multiple punishment for that single act. (*Mesa,* at pp. 197-198.)

In this case, defendant was charged with active participation in a criminal street gang pursuant to section 186.22, subdivision (a). The evidence of defendant's active participation consisted almost entirely of evidence associated with the other charged offenses (namely, transporting methamphetamine & conspiracy to transport methamphetamine). However, there was also evidence that defendant assaulted and threatened his girlfriend, Cardoso, as well as expert opinion evidence that gang members rely on violence and threats of violence to "keep their girlfriends . . . in check," thereby protecting the gang against unwanted attention from law enforcement and others. Such evidence may have supported a finding that defendant promoted or assisted felonious criminal conduct by means other than the crimes for which he was convicted, had the jury been so instructed. Because the jury was only instructed that "[f]elonious criminal conduct" means committing or attempting to commit transportation or sale of a controlled substance (Health & Saf. Code, § 11379), possession of a controlled substance for sale (Health & Saf. Code, § 11378) or conspiracy to commit the crime of transportation and sale of a controlled substance (§ 182; Health & Saf. Code, § 11379), the jury had no

occasion to consider whether defendant's other felonious criminal conduct was proved beyond a reasonable doubt.  On this record, we conclude, pursuant to *Mesa*, that the trial court should have stayed the eight-month term for the active participation in a criminal street gang conviction.  (*Mesa, supra*, 54 Cal.4th at p. 199.)

## DISPOSITION

The judgment is modified to reflect that the sentence imposed for defendant's conviction for active participation in a criminal street gang is stayed pursuant to section 654.  As modified, the judgment is affirmed.  The trial court is directed to send a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


                        /s/

                     Blease, Acting P. J.


We concur:


    /s/

Hoch, J.


    /s/

Renner, J.

8