Filed 5/24/24  P. v. Quinn CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C098436 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF2200121) |
| v. | |
| AARON TOBIAS QUINN, | |
| Defendant and Appellant. | |

Defendant Aaron Tobias Quinn led a highway patrol officer on a high-speed chase ending with defendant crashing into a pole.  Defendant then leaned out of his car and shot at the officer.  The trial court admitted testimony at trial about two prior times defendant evaded law enforcement officials and admitted a certified record of conviction for one of those incidents.  A jury found defendant guilty of, among other crimes, reckless evasion of a peace officer and premeditated attempted murder.  On appeal, defendant challenges the admission of the prior incidents, challenges the admission of his record of conviction,

and asserts the trial court erred by failing to stay sentence for either his evasion or attempted murder conviction. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

At trial, California Highway Patrol Officer Ryan Lambert testified that on January 16, 2022, defendant led him on a lengthy high-speed chase while Officer Lambert was in a marked patrol car with activated sirens. Defendant eventually lost control of his car and crashed into a power line pole. Defendant then leaned out of his car and started shooting at Officer Lambert, who got behind his patrol car door and returned fire. Officer Lambert moved behind his patrol car and he and defendant exchanged gunfire multiple times while Lambert waited for backup to arrive. Several rounds struck Officer Lambert's car's bumper, hood, and windshield. Additional officers arrived and eventually arrested defendant. Officers also searched defendant's car and found 49 rounds of ammunition, baggies of methamphetamine, a digital scale, a firearm holster near the front passenger seat, and a semiautomatic pistol with nine live rounds, one of which failed to correctly feed through the firearm.

At trial, the trial court admitted evidence of two prior times defendant evaded law enforcement officials because these acts were probative as to defendant's intent and the absence of mistake.

For the first event, former Oroville Police Chief Mitchell Brown testified that in June 2007, he aided another officer in a high-speed pursuit of defendant. Both officers drove unmarked cars but had flashing lights and sirens activated. During the pursuit, defendant drove in the wrong lane and another officer in a marked police car with activated sirens drove in the opposite direction and had to swerve off the road to avoid hitting defendant. Defendant also turned his truck into Chief Brown's car, crushing the driver's side door and temporarily trapping Chief Brown in his vehicle. The prosecutor introduced certified records of conviction showing defendant pled guilty or no contest for

2

this incident to evading an officer causing injury and two counts of assault with a deadly weapon, specifically a motor vehicle.

For the second incident, Darrin Brown testified that in June 2015 while working as a Butte County sheriff's deputy, he pursued defendant at high speeds while in a marked police car with lights and siren activated. Defendant eventually drove into a field and former Deputy Brown was unable to follow him. Cedric Schwyzer, who was also a Butte County Sheriff's deputy at the time, testified he joined the pursuit with his marked patrol car and found defendant's truck stuck in the field against a metal fence. Defendant then got out of the car and ran away. Former Deputy Schwyzer commanded him to stop and, after running 20 or 30 yards, defendant complied, and former Deputy Schwyzer arrested him.

The jury instructions relating to the prior incidents stated they could be considered for deciding only whether "defendant acted with the intent to evade and/or assault [Officer] Lambert" and "defendant's alleged acts were not the result of mistake or accident." (See CALCRIM No. 375.) The instruction further stated: "Do not consider this evidence for any other purpose. Do not conclude from this evidence that . . . defendant has a bad character or is disposed to commit crime." (See *Ibid*.)

In closing arguments, the prosecutor argued, "In 2007, [defendant] chose to assault two police officers . . . . [¶] These assaults show us that the assault on Officer Lambert, that that choice didn't come out of nowhere. It's a choice that he's made in the past. So this wasn't a mistake. It wasn't an accident." And the 2015 incident "also show[ed] that . . . defendant's actions in this case were not accidental" because defendant surrendered to former Deputy Schwyzer. The prosecutor stated: "What's that tell us? He knows how to surrender. He knows what his options are. In 2022, with officers in pursuit of him, he knows he has choices. Choices to assault. Choices to surrender."

The jury found defendant guilty of all charges: premeditated attempted murder of a peace officer, assault of a peace officer with a semiautomatic firearm, felon in

possession of a firearm, reckless evasion from a peace officer, and transportation of methamphetamine. The jury also found true several firearm enhancements.

The trial court imposed consecutive sentences on all convictions but stayed the sentence for the assault with a semiautomatic firearm on a peace officer conviction under Penal Code section 654.

Defendant appeals.

## DISCUSSION

## I

### *The Prior Incidents Were Admissible*

Defendant first argues: "In the context of the other evidence in this case, the evidence of prior incidents served only to show a propensity or character trait of [defendant]; he has a propensity to drive away from pursuing officers. This was an unauthorized purpose under Evidence Code[1] [section] 1101, subd[ivision] (a), and was bound to cause severe prejudice, particularly on the issue of premeditation." We disagree.

Evidence "a person committed a crime, civil wrong, or other act" is inadmissible to establish one's propensity for criminal behavior, but it is admissible when relevant to prove "some fact," such as "motive, opportunity, intent, preparation, plan, knowledge, [or] identity." (§ 1101, subds. (a)-(b).) To be relevant, the uncharged misconduct must have a degree of similarity with the charged offense, and the degree of similarity depends on the fact to prove. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) Intent requires the "least degree of similarity (between the uncharged act and the charged offense)." (*Ibid.*) "[T]o be admissible to prove intent, the uncharged misconduct must be sufficiently

---

**1**      Undesignated section references are to the Evidence Code.

4

similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." ' " (*Ibid.*)

Defendant does not challenge the similarity of the prior incidents, but instead asserts they had no relevance to defendant's intent because "[i]ntent to evade the officer could not possibly have been in issue for any reasonable juror." Not so. " '[A] fact—like defendant's intent—generally becomes "disputed" when it is raised by a plea of not guilty or a denial of an allegation. [Citation.] Such a fact remains "disputed" until it is resolved.' [Citation.] [¶] A defendant may seek to limit the admissibility of . . . evidence by stipulating to certain issues. However, defendant did not do so here." (*People v. Scott* (2011) 52 Cal.4th 452, 471.) Here, the prosecution had the burden of proving defendant willfully fled from Officer Lambert to prove the evasion charge (CALCRIM No. 2181) and that defendant willfully assaulted Officer Lambert by shooting at him for the assault on a peace officer charge (CALCRIM No. 860). As the prosecutor stated in closing arguments, defendant's prior evasions and assaults of other law enforcement officials during those evasions tended to prove defendant intended to evade and assault Officer Lambert. The jury instructions also limited the jury's consideration of this evidence to that purpose. Accordingly, the trial court did not abuse its discretion under section 1101, subdivision (b).

Defendant also contends there was prejudice in two different ways. First, defendant asserts the evidence lacked any probative value and thus, the "evidence of prior acts was more prejudicial than probative and should have been excluded under [section] 352." But defendant does not explain how the evidence was prejudicial under section 352 other than having no probative value. Because we conclude the evidence was probative, we reject defendant's section 352 argument. Second, defendant argues at length how erroneously admitting the prior acts was prejudicial at trial because "it is reasonably probable that the erroneous admission of other conduct caused the jury to find

the premeditation element true" for attempted murder. We similarly reject this argument because we have concluded the trial court did not erroneously admit this evidence.

II

*The Record Of Conviction Was Admissible*

Defendant next argues the 2007 record of conviction "was improperly admitted in evidence as hearsay" because "an official record of conviction cannot be used to prove the underlying act actually occurred." We disagree.

Section 452.5, subdivision (b) permits admission of certified records of conviction "to prove the commission, attempted commission, or solicitation of a criminal offense, prior conviction, service of a prison term, or other act, condition, or event recorded by the record." In this way, "section 452.5, subdivision (b) creates a hearsay exception allowing admission of qualifying court records to prove not only the fact of conviction, but also that the offense reflected in the record occurred." (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1460.)

Defendant argues that our Supreme Court disagreed with *Duran* on this point in *People v. Chatman* (2006) 38 Cal.4th 344, but he is mistaken. It is true that in *Chatman*, our Supreme Court relied on its earlier opinion in *People v. Wheeler* (1992) 4 Cal.4th 284 for the proposition that "[m]isdemeanor convictions themselves are not admissible for impeachment, although evidence of the underlying conduct may be admissible subject to the court's exercise of discretion." (*Chatman*, at p. 373, italics omitted.) But *Wheeler* predated the enactment of section 452.5 by four years (see Stats.1996, ch. 642, § 3), and our high court in *Chatman* failed to discuss or even mention that fact, let alone mention *Duran*. Accordingly, *Chatman* cannot be construed as disagreeing with *Duran*, particularly since the conclusion in *Duran* is dictated by the plain language of the statute. (See *People v. Robinson* (2024) 99 Cal.App.5th 1345, 1355 ["the Evidence Code allows the prosecution to introduce documentary *evidence* ' "to prove not only the fact of a

6

conviction, but the commission of the underlying offense" ' "].)  We consequently conclude the trial court did not err in admitting the record of conviction.

III

*Penal Code Section 654 Does Not Bar Punishment For The*

*Evasion Or Attempted Murder Convictions*

Defendant finally argues under Penal Code section 654 that he "had a single intent and objective in both evading the officer and shooting at the officer:  to avoid arrest."  Consequently, defendant contends, "Consecutive sentences for both counts are unauthorized."  We disagree.

Penal Code section 654, subdivision (a) provides, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  This provision "bars the imposition of multiple sentences for a single act or omission, even though the act or omission may violate more than one provision of the Penal Code."  (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1413.)  Penal Code section 654 bars only multiple *punishments* for a single act; it does not bar multiple convictions for a single act.  (*People v. Mesa* (2012) 54 Cal.4th 191, 195.)

Penal Code "[s]ection 654 has long been interpreted to preclude multiple punishments not only for a single act that violates more than one statute, but for an indivisible course of conduct.  [Citation.]  Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of [Penal Code] section 654 depends on the intent and objective of the actor.  [Citation.]  '[I]f all of the offenses were merely incident to, or were the means of accomplishing or facilitating one objective, [the] defendant may be found to have harbored a single intent and therefore may be punished only once.' " (*People v. Mejia* (2017) 9 Cal.App.5th 1036, 1042-1043.)  "Whether multiple convictions are based upon a single act [or indivisible course of conduct] is determined by examining the facts of the case."  (*People v. Mesa,*

7

*supra*, 54 Cal.4th at p. 196.) "[W]e infer that the court made the finding appropriate to the sentence it imposed, i.e., either applying [Penal Code] section 654 or not applying it" and we "affirm the sentence if an implied finding that [Penal Code] section 654 does not apply is supported by substantial evidence." (*Mejia*, at p. 1045.)

Defendant's evasion and attempted murder convictions were not one indivisible course of conduct. Defendant may have committed both crimes generally to avoid capture, but the specific acts and intents differed. Defendant's evasion conviction was based on him recklessly evading Officer Lambert in a motor vehicle. (Veh. Code, § 2800.2; CALCRIM No. 2181.) Whereas defendant's premeditated attempted murder conviction was based on defendant shooting at Officer Lambert with the intent to kill him. (Pen. Code, §§ 664, subds. (e), (f), 187, subd. (a); CALCRIM No. 600.) And there was a meaningful break between these criminal acts. Defendant crashed his car into a pole and had the opportunity to end the pursuit and surrender to Officer Lambert. Defendant instead made the significantly more dangerous and criminally culpable decision to shoot at Officer Lambert. (*People v. Jimenez* (2019) 32 Cal.App.5th 409, 424 ["[Penal Code s]ection 654's purpose is to ensure ' " 'that a defendant's punishment will be commensurate with his culpability' " ' "].)

There is consequently substantial evidence these were different acts with different objectives. The first act was recklessly driving to avoid capture by car and the second act was shooting at Officer Lambert to avoid capture by killing him. Penal Code section 654 is inapplicable in this context. (See *People v. Jimenez*, *supra*, 32 Cal.App.5th at p. 125 ["The evidence was sufficient to support the court's implied finding that [the defendant] had two objectives—he was both intending to evade and trying to assault the deputies in the second vehicle"].) We therefore conclude the trial court's decision to not stay the sentence for either the evasion or attempted murder conviction under Penal Code section 654 is supported by substantial evidence.

DISPOSITION

The judgment is affirmed.

/s/
ROBIE, Acting P. J.

We concur:

/s/
RENNER, J.

/s/
BOULWARE EURIE, J.