Filed 5/7/26  In re S.F. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re S.F., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S.F.,<br><br>    Defendant and Appellant. | A172335<br><br>(Alameda County Super. Ct. No. JV-029518-03) |

In this juvenile wardship proceeding (Welf. & Inst. Code § 602), the juvenile court sustained a petition against minor S.F. for first degree murder, attempted first degree murder, and attempted robbery.  The court imposed concurrent maximum times of confinement of 25 years to life for first degree murder, 15 years to life for attempted first degree murder, and 8 months for attempted robbery.  The court granted him 951 days credit for time he spent in custody before his dispositional hearing.

S.F. raises two issues on appeal.  First, he contends that insufficient evidence supported the juvenile court's finding that the attempted murder was premeditated and deliberate, a prerequisite for the charge's first-degree designation.  If the charge were reduced to second degree, the maximum term of confinement would be seven years instead of fifteen.  (See Welf. & Inst.

1

Code, § 726, subd. (d)(1); Pen. Code, § 664, subd. (a).) Second, he contends that the court should have granted him two more days credit for a total of 953, and the Attorney General agrees. We conclude that only the second contention has merit. We therefore affirm the finding that the attempted murder was premeditated and deliberate, and we modify the dispositional order to reflect 953 days of precommitment credit.

## BACKGROUND

In July 2021, 16-year-old S.F. left a market with his dog, having bought dog food inside. Two young men stopped him outside the market door, and one of them took S.F.'s dog from him at gunpoint. After briefly going back inside the store, S.F. came out and fired multiple gun shots at the two men, who were walking away with the dog. Four of the shots hit one of the men, who died as a result.

Three days later, around 3:30 a.m., S.F. stood near the side of a gas station building. He had the same gun that he had used in the earlier incident, loaded with at least one live round. Robert Whelan pulled up to one of the gas pumps and went inside to buy coffee, noticing S.F. at the side of the building. Whelan returned to his car with the coffee and filled his tank.

As he started to get into the car, S.F. jumped out, pointed the gun at Whelan's face, and screamed something along the lines of, "Give me all your money, motherfucker." S.F. was about five to six feet from Whelan. Whelan believed that S.F. was going to shoot him in the head.

Instead of complying with S.F.'s demand, Whelan threw his coffee at S.F.'s face, ducked down to avoid the gunfire he anticipated, and looked for something with which to fight back. As he threw the coffee, S.F. fired one shot, hitting Whelan in the abdomen. Whelan reached for a garbage can lid so that he could use it as a shield or a weapon. When he stood back up, S.F.

2

was running across the parking lot, and the gas station shop clerk was calling 911. S.F.'s cell phone lay on the ground near Whelan's car.

At S.F.'s jurisdictional hearing, regarding the gas station incident, the juvenile court stated: "The evidence supported finding beyond a reasonable doubt that the shooter in that particular incident did in fact act with a requisite malice intent to kill and took the direct step by shooting the victim from a range of approximately five feet away. There's no reasonable doubt that the shooter in fact acted willfully and with deliberation and premeditation."

Police arrested S.F. on March 30, 2022, and his dispositional hearing was held on November 6, 2024. The juvenile court credited S.F. with 951 days of precommitment confinement.

## DISCUSSION

### I.

S.F. argues that insufficient evidence supports the finding that his attempted murder of Whelan was premeditated and deliberate. We disagree.

We review this challenge as we would in an adult criminal case. (*In re A.G.* (2020) 58 Cal.App.5th 647, 653.) Specifically, " 'we review the whole record in the light most favorable to the judgment to decide whether substantial evidence supports the conviction, so that a reasonable fact finder could find guilt beyond a reasonable doubt.' " (*Ibid.*; see Cal. Rules of Court, rule 5.780 [specifying proof beyond a reasonable doubt as standard of decision]; *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1008.) We must assume the existence of every fact in support of the judgment that the juvenile court reasonably could deduce from the evidence. (*People v. Morales* (2020) 10 Cal.5th 76, 88.) "Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion that the circumstances

might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal." (*People v. Zamudio* (2008) 43 Cal.4th 327, 358.)

Murder is presumed to be second degree (*People v. Anderson* (1968) 70 Cal.2d 15, 24–25), and it requires the formation of a specific intent to kill (see *id.* at p. 26; Pen. Code, § 187, subd. (a)). To qualify as first degree, the murder additionally must be "willful, deliberate, and premeditated." (Pen. Code, § 189, subd. (a).) A reviewing court does not distinguish between *attempted* and *completed* first degree murder for the purpose of determining whether there is sufficient evidence of premeditation and deliberation. (*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1462, fn. 8, disapproved on other ground by *People v. Mesa* (2012) 54 Cal.4th 191, 198–199.)

" ' "[P]remeditated" means "considered beforehand," and "deliberate" means "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action." ' " (*People v. Lee* (2011) 51 Cal.4th 620, 636.) Establishing that a murder or attempted murder was premeditated and deliberate " ' "requires more than a showing of intent to kill; the killer must act deliberately, carefully weighing the considerations for and against a choice to kill before he or she completes the act[ ] . . . ." ' " (*People v. Serrano* (2024) 100 Cal.App.5th 1324, 1333.) "[T]he requisite reflection need not span a specific or extended period of time." (*People v. Stitely* (2005) 35 Cal.4th 514, 543.)

To evaluate whether substantial evidence supports a finding of premeditation, reviewing courts generally look to evidence of planning, motive, and the manner of the attack. (*People v. Anderson, supra*, 70 Cal.2d at pp. 26–27.) These factors "are descriptive and neither normative nor exhaustive, and . . . reviewing courts need not accord them any particular weight." (*People v. Halvorsen* (2007) 42 Cal.4th 379, 420.) They merely help

the reviewing court structure its inquiry. (*People v. Perez* (1992) 2 Cal.4th 1117, 1125.)

S.F. argues that he planned a robbery, not a murder. But even if that is one of the reasonable conclusions a trier of fact could reach, we cannot agree with S.F. that "there is no evidence that [he] planned to kill, or even considered killing Whelan." To the contrary, there is substantial evidence that he planned a robbery *and* that he considered killing or planned to kill his victim. To start with, he brought a loaded gun that he knew was in working order. (See, e.g., *People v. Miranda* (1987) 44 Cal.3d 57, 87 [defendant bringing a loaded gun and shooting an unarmed victim reasonably suggests that defendant "considered the possibility of murder in advance"].) In addition, he arrived at the gas station before Whelan, and he did not initiate the robbery until after Whelan had bought coffee and filled his tank. While he waited, he had time to think about what he would do.

The events that unfolded would permit the trier of fact to infer that S.F. used that time to consider, or perhaps commit to, the possibility that he would kill if his victim were to resist. S.F. positioned himself within five or six feet of Whelan, pointed his loaded gun at Whelan's face, and demanded money, implicitly threatening to kill him if he did not comply. The close range increased the likelihood that Whelan would die if S.F. were to fire. (*People v. Poindexter* (2006) 144 Cal.App.4th 572, 588 [shooting victim from relatively close range supported finding of premeditation].) Moreover, Whelan saw S.F.'s demeanor and heard S.F.'s tone of voice. He testified that he believed that S.F. was going to shoot him in the head. This first-hand impression supported an inference that S.F. was prepared to, or intended to, kill Whelan.

When Whelan threw the coffee instead of complying, S.F. pulled the trigger without hesitation. Viewed in the context of the foregoing facts, S.F.'s unhesitating response permits an inference that he had weighed the considerations for and against killing before he initiated the robbery, and had armed himself because he was willing to kill. Prior reflection, the juvenile court could infer, either had already resulted in a decision to kill his victim or allowed S.F. to make a fast, deliberate decision in the moment once Whelan resisted. The bullet hit Whelan in the abdomen, a vital part of the body, further supporting the juvenile court's conclusion that S.F.'s act was deliberate and premeditated. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1082 [firing shot at victim's abdomen from close range indicated deliberate attempt to kill].)

We are unpersuaded by S.F.'s argument that there is no evidence of motive. The evidence supports an inference that S.F. attempted to kill Whelan to further the robbery, to eliminate Whelan as a witness, or for simple revenge because Whelan did not comply with S.F.'s demand. (See *People v. Watkins* (2012) 55 Cal.4th 999, 1026; *People v. Brito* (1991) 232 Cal.App.3d 316, 323 [victim refusing to comply with robbery demand and trying to flee was evidence of motive to kill].) Regarding the first of these motives, S.F. argues that shooting Whelan would not have furthered the robbery because the sound of the gunshot likely would have drawn a store employee's attention. But when S.F. pulled the trigger, Whelan had already shown that he would not cooperate. The juvenile court could infer that S.F. then decided (or previously had decided when considering what he would do if faced with resistance) to press the matter rather than to retreat, even if his action could draw attention.

S.F. also argues that evidence relating to the manner of the attempted killing did not show a preconceived design to take Whelan's life. (See *People v. Anderson, supra*, 70 Cal.2d at p. 27.) Instead, he contends, the evidence shows that he shot Whelan "reflexively and impulsively" when Whelan unexpectedly threw the coffee at his face. In support of this theory, S.F. points to evidence that he did not shoot Whelan immediately; he fired only when Whelan threw the coffee, presumably an unexpected and startling event; he did not fire again; and he ran, without completing the robbery.

While S.F. offers a reasonable view of the evidence, our inquiry is not whether substantial evidence could support S.F.'s contention that he did not act with premeditation. It is only whether substantial evidence supports the juvenile court's conclusion that he did. (See *People v. Zamudio, supra*, 43 Cal.4th at p. 358.) As with planning and motive, evidence relating to the manner of the attempted killing provides such support. S.F. knowingly pointed a loaded gun at Whelan's head while standing five or six feet away. When startled, his first response was not to retreat but to shoot, firing from close range and hitting Whelan in the abdomen. The juvenile court could infer that S.F. then ran after firing a potentially fatal shot because he lost his nerve or he feared getting caught—not because he had shot impulsively.

We do not suggest that the prosecution's evidence of premeditation and deliberation was particularly strong. A different finder of fact might have agreed with S.F.'s arguments about which inferences are more plausible, and the substantial-evidence issue presented on appeal may be closer than most. Viewing the record as a whole, however, we conclude that sufficient evidence relating to planning, motive, and manner of attempted killing supports the juvenile court's finding that S.F. attempted to kill Whelan with premeditation and deliberation.

7

## II.

S.F. contends that the juvenile court should have credited him 953 days instead of 951 days for his time in custody before his dispositional hearing. The Attorney General agrees, as do we.

The juvenile court must subtract days that a juvenile spends in custody before disposition from their maximum period of physical confinement. (Welf. & Inst. Code, § 875, subd. (c)(1)(C); *In re Antwon R.* (2001) 87 Cal.App.4th 348, 352.)  The court subtracts the full period of precommitment custody starting with the day of arrest and including the day of the dispositional hearing.  (See Pen. Code, § 2900.5; *People v. Bravo* (1990) 219 Cal.App.3d 729, 735 [custody credit includes days of arrest and sentencing]; *Antwon R.*, at p. 352 [minors are entitled to same reduction that adults receive under Penal Code section 2900.5].)

Starting with his arrest on March 30, 2022, S.F. spent all days in custody until and including his dispositional hearing on November 6, 2024. Properly calculated (including an extra day for the leap year in 2024), this was 953 days.  When, as in this case, there is no dispute about a calculation error, we need not remand the matter for recalculation.  (See *In re Antwon R., supra*, 87 Cal.App.4th at p. 353.)  Instead, we may modify the dispositional order.

## DISPOSITION

The dispositional order is modified to reflect that S.F. is entitled to 953 days' credit for precommitment custody. The juvenile court is directed to prepare the amended order and to forward a copy to the appropriate authorities. As modified, we affirm the judgment.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
SWEET, J. *

---

*Judge of the Marin Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.