Filed 1/13/25  P. v. Smith CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082370, D082514 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. SCN432990, SCD292714) |
| ALEXANDER THOMAS SMITH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel F. Link, Judge.  Affirmed as modified.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Daniel Rogers and Adrian R. Contreras, Deputy Attorneys General for Plaintiff and Respondent.

This consolidated appeal involves two cases against defendant Alexander Thomas Smith that culminated in a single sentence.  Following

sentencing, Smith filed a notice of appeal, and his counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436. We requested and obtained supplemental briefing addressing the following issues: (1) whether Penal Code[1] section 654 required the trial court to stay punishment for four criminal threats convictions due to Smith's sentence for a stalking conviction, and (2) whether the trial court made a sufficient oral pronouncement of fees, fines, and assessments and properly imposed them without conducting an ability to pay hearing.

First, we conclude section 654 requires the staying of Smith's sentences for four counts of criminal threats because the criminal threats and stalking cannot be separated. We modify the judgment accordingly. Second, we conclude the trial court did not make a sufficient oral pronouncement of fees, fines, and assessments but that we can, and do, correct the error on appeal. Finally, Smith forfeited the argument that he was entitled to an ability to pay hearing by failing to object to the imposition of fees, fines, and assessments without such a hearing. We affirm the judgment as modified.

FACTUAL AND PROCEDURAL BACKGROUND

In the first case (D082514; SCD292714; Case B), the People charged Smith with attempting to dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1)), making a criminal threat (§ 422), and vandalism (§ 594, subds. (a), (b)(1)). Smith pleaded guilty to the vandalism count and an added count of assault likely to cause great bodily injury (§ 245, subd. (a)(4)), for which the parties agreed to a referral to Behavioral Health Court or, if not accepted, to two years of probation and 365 days in jail releasable to a residential treatment program. Smith was informed that he could face up to four years and eight months in prison if he committed a new crime before sentencing.

---

[1] Undesignated statutory references are to the Penal Code.

2

Nevertheless, after pleading guilty and prior to sentencing, Smith was arrested in the second case.

In the second case (D082370; SCN432990; Case A), the People charged Smith with stalking after having a prior conviction of stalking (§ 646.9, subds. (a) & (c)(2)) and five counts of making a criminal threat (§ 422). The victim was a California Department of Corrections and Rehabilitation (CDCR) social worker assigned to Smith while on parole after serving a prison sentence for the prior stalking conviction.

The amended information in Case A alleges that the stalking (count 1) occurred between August 27, 2021, and April 4, 2022. According to the information and the prosecution's trial brief, the criminal threats allegations consisted of the following: first, on August 27, 2021, Smith sent a text message to the victim threatening to kill her, including stating, "I am going to find out where you live and shoot you in the head. I am going to kill you in your sleep. Are you ready to die bitch?" (count 2); on March 5, 2022, Smith sent a text message to his former parole agent threating to kill the victim's son if the victim did not remove Smith from the mental health program (count 5); on March 10, 2022, Smith sent text messages to a CDCR supervising psychiatrist threatening to kill the victim if the psychiatrist did not remove Smith from the mental health program (count 3); on April 4, 2022, Smith sent a text message to another CDCR social worker threatening to kill the victim's son if the victim did not remove Smith from the mental health program (count 4); finally, also on April 4, 2022, Smith sent a text message to his former parole agent threatening to kill the victim's husband and son if the victim did not remove Smith from the mental health program (count 6).

3

During that period, Smith engaged with the victim on an additional, uncharged occasion. In December 2021, he sent the victim a text message on her personal cell phone calling her a "stupid bitch" and "piece of shit narcissist," accusing her of trying to steal his medical records, wanting to kidnap him and poison him with "chemical lobotomy", and saying "[f]uck you" and "you deserve to be shot."

Prior to trial in Case A, the court held multiple hearings under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*),[2] and the court denied the motions.

After a jury was selected for trial, Smith requested to represent himself, and the court denied the request as untimely. Throughout the trial, Smith interrupted the questioning of witnesses, spoke to the jury, and addressed witnesses as they left the stand. The court repeatedly instructed Smith not to do so and warned that continued interruptions could lead to removal from the courtroom.

Smith brought two additional *Marsden* motions during trial, which the court denied. After the court denied the second motion, at which time the People had called all but one witness, Smith continued to talk out of turn despite the court's repeated instructions to stop. Smith continued to do so after the jury returned, resulting in an admonition in front of the jury. Then, Smith's mother entered the courtroom, and Smith began addressing her and lunged toward her. As a result, deputy sheriffs present had to restrain Smith, and the court removed him from the courtroom. Smith was placed in a room adjoining the courtroom, where he yelled and banged the walls while

---

2    At a *Marsden* motion hearing, the trial court must provide the defendant with the opportunity to express his complaints regarding the assistance he was receiving from appointed counsel. (*Marsden, supra*, 2 Cal.3d at pp. 123–124.)

his attorney argued Smith should be permitted to be present for the People's final witness. Defense counsel also requested a mistrial. The court denied the motion for mistrial and did not permit Smith to return for the People's final witness. The court instructed the jury to disregard Smith's actions in the courtroom.

Later that day, the court permitted Smith to return to the courtroom to testify with instructions to answer only the questions asked. Despite the court's repeated instructions, Smith repeatedly failed to so limit his responses and spoke out of turn. Consequently, the court concluded his testimony over the defense's objection and removed Smith from the court room once again. The court struck his testimony and his attorney's opening statement with instructions not to consider that testimony, the defense's opening statement, or Smith's removal from the courtroom.

The jury found Smith guilty of stalking with a prior stalking conviction and four counts of making a criminal threat, finding him not guilty on count 3. After a bifurcated trial, the jury further found true the allegations that the stalking and three criminal threat counts occurred while Smith was released from custody on bail (§ 12022.1, subd. (b)), that the offenses involved the threat of great bodily harm, that the stalking count and one criminal threat count occurred while Smith was on parole, and that his performance while on parole was unsatisfactory.

Prior to sentencing, Smith again made a *Marsden* motion, which the court denied. The court then sentenced Smith together on both Cases A and B, at the same hearing and as part of a single abstract of judgment.

In Case A, the court sentenced Smith to five years for stalking (the upper term), eight months for each of the four criminal threat convictions (one-third of the middle term, consecutive), and two years for engaging in

5

stalking while released from custody on bail (consecutive). The court found that section 654 did not apply to stay the punishment on the criminal threat convictions. In so ruling, the court explained that "there are two separate crimes here . . . the threat itself, and . . . the stalking as a whole," even though the court also understood that the stalking was an "all-encompassing course of conduct such that did include these threats." Finally, as to Case A, the court stated, "All fines and fees will be imposed on that case."

In Case B, the court sentenced Smith to one year for the assault (one-third of the middle term, consecutive to Case A) and eight months for vandalism (one-third of the middle term, consecutive). Again, the court stated, "All fines and fees will be imposed on that case as well."

On the abstract of judgment, the restitution fines appear as $10,000 in Case A and $600 in Case B (§ 1202.4, subd. (b)), an additional $10,000 in Case A and $600 in Case B, suspended unless parole is revoked (§ 1202.45), a $280 court operations assessment (§ 1465.8), a $210 conviction assessment (Gov. Code, § 70373), and an additional $41 for theft. These amounts matched the Probation Department's recommendations for each case at the time of sentencing. The probation report in Case A recommended a restitution fine of $10,000 pursuant to section 1202.4, subdivision (b), an additional restitution fine of $10,000 pursuant to section 1202.45, stayed unless parole is revoked, a court security fee of $200 pursuant to section 1465.8, and a criminal conviction assessment fee of $150 pursuant to Government Code section 70373. In Case B, the probation report recommended a restitution fine of $600 pursuant to section 1202.4, subdivision (b), an additional restitution fine of $600 pursuant to section 1202.45, stayed unless parole is revoked, a court security fee of $80 pursuant to section 1465.8, a criminal conviction assessment fee of $60 pursuant to

6

Government Code section 70373, and a theft fine of $41 pursuant to section 1202.5.

Appellate counsel filed briefs pursuant to *People v. Wende*, *supra*, 25 Cal.3d 436, indicating he identified no reasonably arguable issue for reversal on appeal. We independently reviewed the record in these cases consistent with our obligations under *Wende* and *Anders v. California* (1967) 386 U.S. 738 (*Anders*). Following that review, we consolidated the appeals in the cases and requested that the parties brief two issues: (1) whether the trial court erred under section 654 by declining to stay the sentences on Smith's convictions for making a criminal threat (§ 422) in light of his sentence for stalking (§ 646.9, subds. (a) & (c)(2)), and (2) whether the trial court made a sufficient oral pronouncement of the fines and fees that appear in the abstract of judgment and was required to hold an ability to pay hearing prior to imposing them.

## DISCUSSION

A. *Section 654*

In his supplemental brief, Smith contends the trial court erred by declining to stay the criminal threats sentences under section 654, contending his convictions for criminal threats involved the same acts and were motivated by the same intent or objective as his conviction for stalking. Based on the allegations in Case A and the case *People v. Roles* (2020) 44 Cal.App.5th 935, 948, we agree.

The offense of stalking occurs when the defendant "willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family." (§ 646.9, subd. (a).) The statute then defines harassment

7

as "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose." (§ 646.9, subd. (e).) A " 'course of conduct' means two or more acts occurring over a period of time, however short, evidencing a continuity of purpose." (§ 646.9, subd. (f).) A credible threat is a communication "made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family, and made with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family." (§ 646.9, subd. (g).)

Five elements make up a criminal threat under section 422, subdivision (a): "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228.)

Section 654, subdivision (a), prohibits "punish[ment] under more than one provision" for "[a]n act or omission that is punishable in different ways by different provisions of law." Whether section 654 bars punishment for two

8

convictions involves "a two-step inquiry": (1) "if the different crimes were completed by a 'single physical act' " then "the defendant may not be punished more than once for that act"; and (2) "if we conclude that the case involves more than a single act—i.e., a course of conduct," then we "consider whether that course of conduct reflects a single 'intent and objective' or multiple intents and objectives." (*People v. Corpening* (2016) 2 Cal.5th 307, 311–312.) "In analyzing whether section 654 bars the imposition of multiple sentences, we consider the evidence in the light most favorable to the judgment and affirm the trial court's sentencing decision—whether express or implied—if it is supported by substantial evidence. [Citations.] Under this standard, this court must view the evidence in the light most favorable to the trial court's finding and presume the existence of every fact the trial court could reasonably deduce from the record . . . '[W]e review the trial court's conclusions of law de novo.' " (*People v. Vasquez* (2020) 44 Cal.App.5th 732, 737.)

First, under the facts of this case viewed most favorably to the trial court's decision, we conclude for the purposes of section 654 that the act of each criminal threat cannot be separated from that of stalking. The evidence is not in question. Smith sent six text messages between August 27, 2021, and April 4, 2022, threatening to kill or referencing killing the victim or her family. At issue is the legal question whether the four individual convictions for criminal threats can be punished separately from the stalking course of conduct, which included each of those criminal threats. As the trial court understood, the stalking "is [an] all-encompassing course of conduct such that did include these threats." Because the stalking course of conduct included the criminal threats, and the two cannot be separated, we conclude section 654 prohibits separate punishment.

9

In *Roles*, the defendant was charged with stalking and criminal threats for leaving many threatening messages on the victim's voicemail over the course of two days. (*Roles, supra*, 44 Cal.App.5th at p. 940.) Because the victim listened to all of the messages at once, the court determined that the facts supported the finding of only one criminal threat charge arising out of "a single period of sustained fear." (*Id.* at p. 942.) The court then concluded that "the acts that constituted making a criminal threat (i.e., the 15 threatening voice messages) cannot be separated from defendant's course of conduct in stalking [the victim]. Both crimes were based on the same phone calls and voice messages." (*Id.* at p. 947.) Thus, the court held "that section 654 applies to prohibit separate punishments for the stalking and criminal threats convictions." (*Id.* at p. 948.)

Here, even though the acts making up the criminal threats were separated in time and the victim testified that she experienced greater fear based on subsequent threats, each of the four text messages sent to the victim "cannot be separated from defendant's course of conduct in stalking." (*Roles, supra*, 44 Cal.App.5th at p. 947.) Indeed, the amended information alleges that the stalking (count 1) occurred between August 27, 2021, and April 4, 2022—from the date of the first criminal threat to the date of the last criminal threat. Further, in closing argument, the prosecutor argued that the course of conduct for stalking included the August 27, March 5, and two April 5 text messages. Even though the stalking crime punished Smith for doing more than each single criminal threat, the criminal threat acts were included in the crime of stalking. (See *People v. Mesa* (2012) 54 Cal.4th 191, 198, 200 ["The gang crime punishes defendant for doing more than the act of shooting the victims or possessing a firearm, but there is no question that defendant's act of shooting the victims or possessing a firearm is punished by

10

the gang crime," therefore section 654 barred punishment on the gang crime in addition to the punishment for assault with and possession of a firearm; "Section 654 applies where the 'defendant stands convicted of both (1) a crime that requires, as one of its elements, the intentional commission of an underlying offense, and (2) the underlying offense itself' "].)

Even if the text messages were "temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent" to commit a new criminal threat, the temporal separation merely permitted each text message to serve as a separate criminal threat. (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935 [three bribes separate in time but with the same general intent could be punished separately under section 654].) Each criminal threat still fell within the course of conduct of stalking.

Second, in committing each of the criminal threats and the stalking course of conduct, Smith acted with a single intent and objective, consistent with the similar intent requirements required under the criminal threats and stalking statutes. That intent and objective was to threaten the victim, causing the victim to fear for her and her family's safety, with the goal that she change his status in the mental health program.

We acknowledge the dicta in *Roles* stating, "If there was evidence in the record that [the victim] sustained fear from individual voice messages, such that some of the threatening voice messages could apply to the stalking conviction and others could support the criminal threats conviction, the People's position [seeking separate punishment] might have merit." (*Roles, supra*, 44 Cal.App.5th at p. 948.) Here, even with multiple incidents of criminal threats, the People's position does not have merit because of the allegation and argument that each criminal threat was part of the stalking

11

course of conduct and because that course of conduct was pursuant to a single objective.[3]

Accordingly, we modify the judgment to stay the sentences for Smith's convictions on counts 2, 4, 5, and 6.

B. *Fines and Fees*

1. *Oral Pronouncement*

Smith next contends that the trial court erred by failing to orally pronounce fines and fees on the record prior to the clerk including them in the abstract of judgment. The People argue that Smith forfeited this argument by failing to object.

Courts have held that the "failure to specify the amount and statutory basis for each fine, fee, and penalty assessment is a 'legal error[ ] at sentencing,'" but that such error "can be reviewed on appeal ' "regardless of whether an objection or argument was raised . . . ." ' " (*People v. Hartley* (2016) 248 Cal.App.4th 620, 637, citing *People v. Smith* (2001) 24 Cal.4th 849, 852; *People v. Hamed* (2013) 221 Cal.App.4th 928, 938 (*Hamed*) ["a sentencing court should make a 'detailed recitation of all the fees, fines and penalties on the record' "].) To fulfill its obligation, the court may recite each amount with its basis on the record, or it may "make a shorthand reference in its oral pronouncement to 'penalty assessments as set forth in the' probation report" or some other document. (*Hartley* at p. 637, *Hamed* at p. 939-940.) Here, the court did not specify the amount and basis of the fines, fees, and penalty assessments, nor did the court even make a shorthand reference to the probation report. The trial court merely stated that "[a]ll fines and fees

_____

[3]    We express no opinion whether the prosecution could plead around section 654 by alleging stalking based on only two incidents.

12

will be imposed" in each case without specifying the amount and basis. This statement was not sufficient.

However, the court in *Hamed* concluded the failure to specify the basis can be corrected on appeal without remanding: "Since we may correct the error on appeal, there is no need to remand this matter to the sentencing court to orally pronounce the correct judgment." (*Hamed, supra*, 221 Cal.App.4th at p. 940.) In this case, the abstract of judgment included amounts under section 1202.4, subdivision (b), section 1202.45, section 1465.8, Government Code section 70373, and section 1202.5 for "theft" that matched the recommendations in the probation reports. Following *Hamed*, we infer that the trial court intended the statement "[a]ll fines and fees will be imposed" to refer to the fines and fees recommended in the probation reports, and we correct the error. In essence, the error was harmless because Smith had notice of the amounts recommended in the probation report and the trial court announced the intent to impose "all" fines and fees.

2. *Ability to Pay Hearing*

Finally, Smith contends that the trial court erred by failing to hold an ability to pay hearing prior to imposing the section 1202.4, subdivision (b) restitution fine and the assessments under section 1465.8 and Government Code section 70373, citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1164 (*Dueñas*). In *Dueñas*, the court "conclude[d] that due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under . . . section 1465.8 and Government Code section 70373." (*Dueñas*, at p.1164.) *Dueñas* was decided long before the sentencing hearing in this case, giving Smith the opportunity to object in trial court based on that case. Likewise, as to the restitution fine, section 1202.4

13

expressly allows consideration of a defendant's ability to pay when determining whether to increase the restitution fine above the statutory minimum of $300. (§ 1202.4, subd. (c).) Notably, Smith was aware before sentencing that the probation department recommended imposing the $10,000 and $600 restitution fines.

As this court has previously noted, "[t]he concept of forfeiture for failure to raise ability to pay fines, fees or assessments is well established in our case law prior to *Dueñas*[, *supra,* 30 Cal.App.5th 1157]. Some of the cases include *People v. Aguilar* (2015) 60 Cal.4th 862, 864 . . .; *People v. Trujillo* (2015) 60 Cal.4th 850, 853-854 . . .; *People v. Nelson* (2011) 51 Cal.4th 198, 227 . . .; and *People v. Avila* (2009) 46 Cal.4th 680, 729 . . . ." (*People v. Keene* (2019) 43 Cal.App.5th 861, 864.) Because Smith was in the best position to know his ability to pay, it was incumbent on him to raise the issue. (*Avila*, at p. 729.) The court's statement that all fines and fees would be imposed provided a sufficient opportunity for Smith to raise *Dueñas* and the ability to pay provision of section 1202.4. Yet he failed to do so, forfeiting this claim of error on appeal.

## DISPOSITION

The judgment is modified by staying the sentence on counts 2, 4, 5, and 6 as described in this opinion. The trial court is directed to prepare a minute order and an amended abstract of judgment to reflect the modification of the sentence and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

The oral pronouncement of fines and fees is corrected.

As so modified, the judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

IRION, J.

CASTILLO, J.

15